IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| MARCIA KIMBLE, *individually, and on behalf of all others similarly situated,* | )<br>)<br>) |
| Plaintiff, | ) Case. No. 2:23-cv-10037-DML-EMS<br>)<br>) District Judge David M. Lawson |
| v. | )<br>) Magistrate Judge Elizabeth A. Stafford |
| FIRST AMERICAN HOME WARRANTY CORP. and FIVESTRATA LLC, | )<br>)<br>) |
| Defendants. | ) Jury Trial Demanded<br>) |

# FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, Marcia Kimble ("Plaintiff" or "Kimble"), on behalf of herself and all others similarly situated, by and through her undersigned attorneys, files her First Amended Complaint against Defendant First American Home Warranty Corp. ("FAHWC" or "First American") and FiveStrata LLC ("FiveStrata") (collectively "Defendants"). In support thereof, Plaintiff states as follows:

## NATURE OF THE CASE

1. Plaintiff Marcia Kimble brings this action individually and on behalf of all others similarly situated, seeking damages and any other available legal or equitable remedies resulting from the unlawful actions of FAHWC and FiveStrata. Defendants violated Plaintiff and the putative class-members' rights by placing solicitation calls to Plaintiff and the putative class members' residential lines, by making two or more solicitation calls to residential subscribers whose numbers were registered on the Do Not Call Registry. Those acts and omissions, which are described at length herein, were in violation of the Telephone Consumer Protection Act

("TCPA"), 47 U.S.C. § 227, *et seq.* and the TCPA's corresponding regulations.

## BACKGROUND ON THE TCPA

2. In 1991, after passage with bipartisan support in Congress, President George H.W. Bush signed the TCPA into law, to protect consumers' privacy rights- specifically, the right to be left alone from unwanted telemarketing calls.

3. A leading sponsor of the TCPA described telemarketing "robocalls" the "scourge of modern civilization." 137 Cong. Rec. 30821 (1991).

4. The TCPA, through the accompanying FCC regulations, 47 C.F.R. § 64.1200(c) *et seq.*, affords special protections for "residential subscribers" who register their phone numbers on the National Do Not Call Registry.

5. Since 2003, persons who register cell phone numbers on the Do Not Call registry have been considered to be "residential subscribers" for the purpose of 227(c)(5) and the Do Not Call registry. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("we will presume wireless subscribers who ask to be put on the national do-not-call list to be 'residential subscribers.'")

6. 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c) provide that each person who receives more than one call within a 12-month period on their phone, where that called party did not provide express written consent upon a clear and conspicuous disclosure from the telemarketer, after the phone number was registered on the National Do Not Call Registry for more than 31 days is entitled to recover a penalty of $500 per call, and up to $1,500 per call if the TCPA is willfully or knowingly violated.

7. The TCPA also provides protections for persons who receive prerecorded or artificial voice calls without the caller (or the company acting on the caller's behalf) first

obtaining the recipient's prior express written consent to receive such calls. *See* 47 U.S.C. § 227(b)(1); 47 C.F.R. §§ 64.1200(a)(3), (f)(9). The penalty for violating these provisions is $500 per call and up to $1,500 per call placed in willful violation of the TCPA. 47 U.S.C. § 227(b)(3)

8. Decades after the TCPA passed into law, it is still unfortunately the case that "[m]onth after month, unwanted telemarketing calls and texts top the list of consumer complaints received by the [Federal Communications] Commission." Omnibus TCPA Order, 30 FCC Rcd. 7961, 7964 (F.C.C. July 10, 2015).

9. In fact, in 2021 alone, there were over ***five million complaints*** from Americans to the FTC about unwanted telemarketing calls. Federal Trade Comm'n, *FTC Issues Biennial Report to Congress on the National Do Not Call Registry (*Jan. 5, 2022) *available* at: https://www.ftc.gov/news-events/news/press-releases2022/01/ftc-issues-biennial-report-congress-national-do-not-call-registry.

10. The private right of enforcement of the TCPA is critical to stopping the proliferation of these unwanted telemarketing calls. For example, while the Federal Communications Commission levied over $200 million in penalties against telemarketers between 2015 and 2018, it collected less than $7,000 of that amount. *See* Sarah Krouse, *The FCC Has Fined Robocallers $208 Million. It's Collected $6,790*, THE WALL STREET JOURNAL, March 28, 2019, https://www.wsj.com/articles/the-fcc-has-fined-robocallers-208-million-its-collected-6-790-11553770803.

**JURISDICTION AND VENUE**

11. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising

PLAINTIFF'S FIRST AMENDED CLASS-ACTION COMPLAINT

under the laws of the United States. See *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

12. This Court has personal jurisdiction over both Defendants as they systematically conduct business in the State of Michigan.

13. Additionally, both FiveStrata and FAHWC called Plaintiff unlawfully on her cell phone with a "313" area code, which is associated with Metropolitan Detroit in the State of Michigan.

14. Furthermore, both FiveStrata and FAHWC used a "313" area code number to call Plaintiff.

15. Through those acts, FiveStrata and FAHWC knowingly and purposefully availed themselves to the State of Michigan.

16. Plaintiff resided within this District at all times relevant hereto. Plaintiff received the calls at issue and experienced the associated harm within this District.

17. Accordingly, personal jurisdiction exists and venue is proper pursuant to 28 U.S.C. §1391 (b)(1) and §1391 (b)(2).

**PARTIES**

18. Plaintiff, Marcia Kimble is a natural person who resided in Detroit, Michigan at all times relevant hereto.

19. Plaintiff is a "person" as that term is defined by 47 U.S.C. §153(39).

20. Defendant FAHWC is a California corporation which maintains its headquarters at 1244 Apollo Way, Santa Rosa, California 95407.

21. FAHWC can be served through its registered agent "Registered Agent Solutions,

PLAINTIFF'S FIRST AMENDED CLASS-ACTION COMPLAINT

Inc.", at 720 14th St., Sacramento, California 95814.

22. FAHWC is a "person" as that term is defined by 47 U.S.C. §153(39).

23. Defendant FiveStrata is a Utah limited liability company with headquarters located at 313 S 740 E St #2, American Fork, Utah 84003.

24. FiveStrata can be served through its registered agent, Incorporating Services, LTD, Inc. located at 1108 E. South Union Ave., Midvale, Utah 84047.

25. FiveStrata is a "person" as that term is defined by 47 U.S.C. §153(39).

26. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

**Relationship Between FAHWC and FiveStrata**

27. FAHWC is a prominent national corporation that sells home warranties offering to cover the cost of replacement or repair for appliances, plumbing and HVAC systems for a monthly fee.

28. FiveStrata is a marketing company that engages in digital and telemarketing for companies such as FAHWC.

29. FAHWC entered into a contract with FiveStrata where FiveStrata would receive a commission from FAHWC per "lead". Accordingly, FiveStrata was encouraged by FAHWC to contact as many consumers as possible on behalf of FAHWC.

30. The contract afforded FAHWC the right to terminate its relationship with FiveStrata without advance notice.

31. The contract provided strict terms which five FAHWC the ability to substantially control the marketing activities of FiveStrata.

32. FAHWC strictly limited, or had the ability to strictly limit, how FiveStrata operated its marketing activities.

33. FAHWC demanded strict recordkeeping by FiveStrata and had the contractual right to audit and examine the books and facilities of FiveStrata.

34. The contract provides strict terms by which FiveStrata can market FAHWC materials.

35. FAHWC provided advertising materials and scripts to FiveStrata.

36. Furthermore, when FiveStrata made marketing calls on behalf of FAHWC, the phone number appeared on the recipient's caller ID as "First American Home Warranty Company."[1]

37. While FAHWC and FiveStrata may argue their contract was not an "exclusive" coas both parties may have had contractual relationships with other Parties, FiveStrata was engaged in a telemarketing campaign exclusively for FAHWC.[2]

38. As it relates to the solicitation calls made to Kimble and the putative class members, FAHWC acted as a principal, and FiveStrata as FAHWC's agent.

**FACTUAL ALLEGATIONS**

39. At all times relevant hereto, Plaintiff, Marcia Kimble owned a cell phone, the number for which was (313) XXX-4318.

---

[1] Plaintiff alleges as such because the two calls made by FiveStrata on behalf of FAHWC caused the same numbers to be displayed on Kimble's caller ID as the calls placed directly by FAHWC.

[2] Plaintiff alleges this because FiveStrata only sought to solicit FAHWC warranties during the calls to Kimble and FiveStrata's phone number appeared as FAHWC on Kimble's caller ID.

- 6 -

PLAINTIFF'S FIRST AMENDED CLASS-ACTION COMPLAINT

40. Plaintiff registered that cell phone number on the Federal Do Not Call Registry on April 25, 2019.

41. Plaintiff registered that cell phone number on the Do Not Call list in order to obtain solitude from invasive and harassing telemarketing calls.

42. At all times relevant hereto, Plaintiff used that cell phone primarily for residential purposes.

43. Specifically, Kimble uses her cell phone to speak with friends and family, speaking with doctors and health professionals at her doctor's office, speaking with her children and grandchildren.

44. Ms. Kimble did not consent in any manner, to receive telemarketing calls from FAHWC or FiveStrata, much less provide the express written consent that is required by the TCPA before placing solicitation calls to numbers on the Do Not Call registry.

**FiveStrata's Solicitation Calls to Kimble on Behalf of FAHWC**

45. On December 23, 2019, at approximately 12:59 pm EST, FiveStrata called Ms. Kimble's cell phone, holding itself out as "National Home Project" from the number (313) 749-0083.

46. In that call FiveStrata, called Ms. Kimble soliciting home warranty policies and sought permission for "First American Home Warranty" to call Ms. Kimble to call her with an automatic telephone dialing system.

47. FiveStrata did not solicit products or services for any other company in that call, other than FAHWC. Accordingly, the call was made exclusively on behalf of FAHWC.

PLAINTIFF'S FIRST AMENDED CLASS-ACTION COMPLAINT

48. Ms. Kimble expressly stated in that call she did not want to be bothered by any phone calls.

49. Ms. Kimble stated if she wanted to speak with FAHWC, she would call the company herself.

50. Despite the fact FiveStrata did not have express written permission to place solicitation calls to her number at any time, despite the absence of any prior established business relationship and despite the fact Kimble explicitly told FiveStrata she did not want to receive calls from or on behalf of FAHWC, FiveStrata continued its telemarketing campaign to Kimble on behalf of FAWHC.

51. Specifically, FiveStrata placed a second solicitation call to Kimble's cell phone on December 27, 2019 from the number (313) 749-0083.

52. Kimble found the call to be highly annoying after she explicitly told FiveStrata she did not want calls from or on behalf of FAHWC.

53. In order to confirm the identity of the party/parties calling her over her objection while her number was on the federal Do Not Call registry, in the December 27, 2019 call, Kimble remained on the line with the FiveStrata representative and was thereafter transferred to FAWHC.

54. For those two calls, as set forth in greater detail below, FiveStrata is directly liable as the party that placed the unlawful telemarketing calls to Kimble.

55. FAHWC is vicariously liable for those two calls made by FiveStrata to Kimble, as the calls were made on FAHWC's behalf.

[this portion of the page was intentionally left blank]

### FAHWC's Calls Placed Directly to Kimble

56. After FiveStrata placed the December 23, 2019 and December 27, 2019 calls to Kimble on FAHWC's behalf, FAHWC placed several additional solicitation calls directly to Kimble.

57. Those calls were made by FAHWC without express written consent or a prior established business relationship.

58. Those calls were placed by FAHWC to Kimble on instances including but not limited to the below instances:

| Date of Call | Number of Calling Party |
|---|---|
| December 30, 2019 | (313) 749-0083 |
| December 31, 2019 | (313) 749-0083 |
| January 2, 2020 | (313) 749-0083 |
| January 3, 2020 | (313) 749-0083 |

59. In those calls, FAHWC attempted to sell Kimble a home warranty plan.

60. Accordingly, each of the aforementioned calls were "solicitations" by nature and part of a campaign of solicitation calls.

61. The foregoing acts and omissions were in violation of the TCPA.

### DIRECT AND VICARIOUS LIABILITY

PLAINTIFF'S FIRST AMENDED CLASS-ACTION COMPLAINT

62. Under the TCPA, a "seller" (a company who hires third-party telemarketers to place phone calls on its behalf) cannot absolve itself from liability simply by outsourcing unlawful telemarketing various agents, call centers and vendors. Accordingly, companies who outsource unlawful telemarketing activities to third-parties are vicariously liable for those violations.

63. The FCC has long made clear that sellers who outsource unlawful telemarketing activities to third-party vendors are subject to vicarious liability:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013).

64. Moreover, the 2013 FCC ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107.

65. The evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a

reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id*. at 6593.

66. FAHWC permitted and enjoyed the benefits of FiveStrata's non-compliant telemarketing.

67. FAHWC acted as the principal to FiveStrata, who acted as FAHWC's agent.

68. FiveStrata had apparent authority to act on behalf of FAHWC when violating Kimble and the putative class-members' rights.

69. Furthermore, FAHWC ratified FiveStrata's unlawful telemarketing of which it knew or had reason to know was in violation of the TCPA.

70. For the unlawful calls to Kimble and the putative class members by FiveStrata on FAHWC's behalf, FAHWC is vicariously liable for the unlawful calls, where FiveStrata is directly liable.

71. For the unlawful calls FAHWC placed directly to Kimble and to the putative class, FAHWC is directly liable.

## CLASS ALLEGATIONS

72. Plaintiff brings this claim on behalf of a class, pursuant to Federal Rule of Civil Procedure 23.

73. Plaintiff seeks to represent the following class:

**FiveStrata-FAHWC Do-Not-Call Class:** All persons in the United States: (1) the person's telephone number was on the National Do-Not-Call Registry; (2) the person received two or more calls from FiveStrate on behalf of FAHWC within twelve months; (3) those calls were for the purpose of soliciting products or services of FAHWC from four years prior to the filing of this Complaint through the date a class is certified.

**FAHWC Do-Not-Call Class:** All persons in the United States: (1) the person's telephone number was on the National Do-Not-Call Registry; (2) the person received two or more calls from FAHWC within twelve months; (3) those calls were for the purpose of soliciting products or services of FAHWC from four years prior to the filing of this Complaint through the date a class is certified.

74. Plaintiff reserves the right to amend or modify the class definitions consistent with the record.

75. The putative class members' identities are readily ascertainable from either or both of Defendants' records or records within either or both of Defendants' control.

76. Plaintiff's claims are typical of the class members, as all are based on the same facts and legal theories.

77. Plaintiff will fairly and adequately protect the interests of the Class defined in this complaint. The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and class actions, and neither the Plaintiff nor her attorneys have any interests which might cause them not to vigorously pursue this action.

78. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules Civil Procedure because there is a well-defined community interest in the litigation.

79. Class Members are so numerous and that their individual joinder of all class members is impracticable. There are no likely difficulties to be encountered in managing this case as a class action.

80. Common questions of law and fact exist to all Class Members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to the following:

PLAINTIFF'S FIRST AMENDED CLASS-ACTION COMPLAINT

    a. Whether FAHWC placed solicitation calls to Plaintiff and the putative class members' residential phones;

    b. Whether FiveStrata placed solicitation calls to Plaintiff and the putative class members' residential phones;

    c. Whether FAHWC had the ability to direct and control FiveStrata's marketing activities;

    d. Whether FAHWC ratified any unlawful telemarketing by FiveStrata;

    e. Whether either Defendant has systematic failures to obtain express written consent to call Plaintiff and the putative class members;

    f. Whether either or both Defendants' conduct violates 47 U.S.C. § 227(c) and the corresponding rules and regulations implementing the TCPA; and

    g. Whether Plaintiff and the putative class members are entitled to increased damages for each violation based on the willfulness of Defendants' conduct.

81. Plaintiff and the putative class members have claims arising out of Defendants' uniform course of conduct, namely improperly placing solicitation calls to the Plaintiff and the putative class members despite registration on the Do Not Call registry.

82. Plaintiff will fairly and adequately protect the interests of the class members insofar and Plaintiff has no interests that are averse to the absent class members. Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue this class action lawsuit.

83. The class action mechanism is superior to other available means for the fair and efficient adjudication of this case. Each individual class member may lack the resources to

undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent and contradictory judgements. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

84. The Class representative was at all times relevant hereto a resident of Wayne County in the State of Michigan. Accordingly, this District is an appropriate forum in which to adjudicate this dispute.

85. Based on discovery and further investigation, Plaintiff may, in addition to moving for class certification, use modified definitions of the class, class claims, and the class period, and/or seek class certification only as to particular issues as permitted under Rule 23. Such modified definitions may be more expansive to include consumers excluded from the foregoing definitions.

## COUNT I
## **DEFENDANTS VIOLATED 47 US.C. § 227(c)(5) AND 47 C.F.R. § 64.1200(c)**

86. Kimble incorporates by reference the allegations of the previous paragraphs as if fully stated in this Count.

87. Kimble brings this Count individually and on behalf of all others similarly situated.

88. The TCPA provides that it is a violation of the law for a person whose phone number is registered on the National Do Not Call Registry to receive more than one solicitation call on their phone "within any 12-month period by or on behalf of the same entity." *See* 47 U.S.C. §§ 227(c)(1), (c)(5); 47 C.F.R. § 64.1200(c)(ii).

89. The penalty for each call made in violation of the TCPA's restrictions on placing telemarketing calls to numbers registered on the National Do Not Call Registry is $500 per violation and up to $1,500 per violation if the violation is determined to be willful. *See* 47 U.S.C. §§ 227(c)(5).

90. In addition, the TCPA allows the Court to enjoin FiveStrata and FAHWC's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do Not Call Registry. *See* 47 U.S.C. §§ 227(c)(5)(A); 47 C.F.R. § 64.1200(c).

91. By Kimble and the putative class members after their numbers were registered on the National Do Not Call Registry, FiveStrata and FAHWC violated the TCPA, including but not limited to, 47 U.S.C. §§ 227(c)(1) and the TCPA's corresponding regulations.

92. FiveStrata and FAHWC knew or should have known that Ms. Kimble and the putative class members had their numbers registered on the Do Not Call Registry.

93. Kimble and the putative class members are entitled to damages of $500.00 per violation for each call placed by FAHWC and up to $1,500.00 per violation if the Court finds FAHWC willfully violated the TCPA.

**<u>Prayer for Judgment</u>**

WHEREFORE, Plaintiff Marcia Kimble, individually, and or behalf of all other similarly situated, requests the Court grant the following relief:

a. Enter an order against FAHWC and FiveStrata pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3), certifying this action as a class action and appointing Kimble as the class representative;

b. Enter an order appointing Kimmel & Silverman, P.C as class counsel;

c. Enter judgment in favor of Ms. Kimble and the putative class for all damages available under the TCPA, including statutory damages of $500 per violation of 47 U.S.C. § 227(c) and up to $1,500 per violation of each subsection if and/or FiveStrata willfully violated the TCPA;

d. Enter a judgment in favor of Ms. Kimble and the putative class that enjoins FAHWC and FiveStrata from violating the TCPA's regulations prohibiting FAHWC and FiveStata from calling/texting numbers registered on the National Do Not Call Registry;

e. Award Ms. Kimble and the class all expenses of this action, and requiring FAHWC and FiveStrata to pay the costs and expenses of class notice and administration; and

f. Award Ms. Kimble and the class such further and other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, MARCIA KIMBLE, demands a jury trial in this case.

Respectfully submitted,

Dated: April 6, 2023        By: /s/ Jacob U. Ginsburg
                                Jacob U. Ginsburg, Esq.
                                Kimmel & Silverman, P.C.
                                30 East Butler Ave.
                                Ambler, PA 19002
                                Phone: (215) 540-8888 x 104
                                Facsimile: (877) 788-2864
                                Email: jginsburg@creditlaw.com
                                teamkimmel@creditlaw.com

## CERTIFICATE OF SERVICE

I, Jacob U. Ginsburg, Esq. hereby certify that I served a true and correct copy of the foregoing on all counsel of record via ECF on this April 6, 2023.

/s/ *Jacob U. Ginsburg*