# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
EASTERN DIVISION

| | |
|---|---|
| MARCIA KIMBLE, individually and on behalf of all others similarly situated, | Case No. 2:23-cv-10037-DML-EAS |
| Plaintiffs, | District Judge David M. Lawson |
| v. | Magistrate Judge Elizabeth A. Stafford |
| FIRST AMERICAN HOME WARRANTY CORP. and FIVESTRATA, LLC, | |
| Defendants. | |

**DECLARATION OF CHRISTOPHER E. ROBERTS IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

I, Christopher E. Roberts, hereby declare, pursuant to 28 U.S.C. § 1746:

1. This Declaration is submitted in support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Settlement.

2. I am over the age of 18 years, am of sound mind and am otherwise competent to make this declaration. I have personal knowledge of the matters asserted in this Declaration.

3. I represent Plaintiff Marcia Kimble in the above-captioned matter. I am not related to Ms. Kimble. This matter concerns whether Defendants violated the Telephone Consumer Protection Act ("TCPA") for allegedly calling Plaintiff and a putative class of people whose phone numbers were registered on the National Do-Not-Call Registry.

**Biographical Information**

4. I am a partner with the firm of Butsch Roberts & Associates LLC. I submit this declaration in support of plaintiff's motion for preliminary approval of settlement in the above-

captioned action. I am a member in good standing of the Illinois, Missouri and Kansas Bars, and I have never been the subject of any disciplinary proceeding. Furthermore, I am admitted to practice before this Court, The United States Court of Appeals for the Eighth Circuit, the United States Court of Appeals for the Ninth Circuit, the United States Court of Appeals for the Tenth Circuit, the United States District Court for the Northern District of Illinois, the United States District Court for the Southern District of Illinois, the United States District Court for the Eastern District of Missouri, the United States District Court for the Western District of Missouri, the United States District Court for the District of Kansas, the United States District Court for the Southern District of Texas, the United States District Court for the Northern District of Texas and the United States District Court for the District of Colorado.

5. I am a 2009 graduate of the University of Missouri-Kansas City School of Law, where I received my Juris Doctor degree. I was admitted to the Missouri Bar in 2009, the Illinois Bar in 2010 and the Kansas Bar in 2010.

6. I frequently speak to members of the Missouri Bar on class action practice and consumer law-related issues. I spoke most recently in 2022 at the Solo and Small Firm Conference sponsored by The Missouri Bar about class action practice and procedure.

7. In addition, I am a frequent contributor to the American Bar Association on class action-related issues. I am the author of a chapter in the 2018, 2020, 2021, 2022 and 2023 books published by the American Bar Association about class action law from each Circuit Court of Appeals. The chapter I authored in each publication focuses on class action jurisprudence in the Eighth Circuit Court of Appeals. I have also written multiple articles on class action-related issues that have been published by the American Bar Association.

8. I have been appointed to serve as class counsel in numerous cases, including, but not limited to: *Ruby v. Build-A-Bear, Inc.*, Case No. 4:21-cv-01152-JAR (E.D. Mo. 2023) (TCPA case); *Staunton Lodge No. 177, A.F. & A.M. v. Pekin Insurance Company*, Case No. 2020-L-001297, Circuit Court of Madison County, Illinois; *Smith v. Leif Johnson Ford, Inc.*, Case No. 19SL-CC01942, Circuit Court of St. Louis County, Missouri (TCPA case); *Martin v. Wakefield & Associates, Inc.*, Case No. 19SL-AC12801-01, Circuit Court of St. Louis County; *Harding and Moore v. Wakefield & Associates, Inc.*, Case No. 18SL-AC26348-01, Circuit Court of St. Louis County; *Maierhoffer v. Blitt & Gaines, P.C.*, Case No. 17SL-CC04297, Circuit Court of St. Louis County; *Harris v. Wakefield & Associates, Inc.*, Case No. 1722-CC11907, Circuit Court of the City of St. Louis; *Moore v. Family Dollar Stores, Inc.*, No. 14-01542-JAR (E.D. Mo. 2016) (TCPA case); *Wallach v. Federal Financial Group LLC*, Circuit Court of St. Louis County, No. 15SL-CC01040-01 (TCPA case); *Kissel v. Liberty Acquisitions Servicing, LLC*, Case No. 1411-CC00504, Circuit Court of St. Charles County; *Lewis v. Spinnaker Resorts, Inc.*, Circuit Court of Christian County, No. 14AF-CC00413-01; *Harbison v. Litow & Pech, P.C.*, Circuit Court of St. Louis County, No. 12SL-CC03776-01; *Lemay v. Rocket Lawyer, Inc.,* Circuit Court of St. Louis County, No. 11SL-CC04557. In addition, I performed substantial work on *In re: Life Time Fitness Telephone Consumer Protection Act (TCPA) Litigation*, No. 14-MD-2564, 2015 WL 77337334 (D. Minn. 2015) *affirmed by In re: Life Time Fitness, Inc., Tel. Consumer Protection Act (TCPA) Litig.*, 847 F.3d 619 (8th Cir. 2017) (TCPA Case). My law partner, David T. Butsch, was named as the class counsel from our firm in the *Life Time Fitness* case.

9. Butsch Roberts & Associates LLC is an AV rated law firm which began operating under my law partner, David T. Butsch, on November 1, 2008. The firm specializes in complex civil litigation, with an emphasis on consumer class litigation. The two members of the firm, David

3

T. Butsch and Christopher E. Roberts, have a combined litigation experience of more than 40 years.

10. My firm is familiar with the laws and rules applicable to this case. My firm is prepared to prosecute this case on behalf of the plaintiff and the putative class. My firm has participated in numerous cases involving the TCPA.

11. This Declaration sets forth a brief summary of the settlement negotiations that ultimately led to the proposed settlement and the bases upon which Plaintiff's counsel recommend that the Court preliminarily approve the settlement. The following recitation is not all-inclusive, but rather, it is intended to give an overview of the settlement, and the analysis that Plaintiff's counsel incorporated in agreeing to a settlement on behalf of the putative class. I believe that these facts demonstrate that the settlement is fair, reasonable, and adequate, and should be preliminarily approved by the Court.

## Settlement Negotiations

12. In connection with a status conference held with the Court on July 19, 2023, the parties agreed to mediate the case with Judge Gerald E. Rosen (Ret.). The parties agreed to mediate the case so long as FiveStrata agreed to provide Plaintiff information regarding the number of persons whose phone numbers were on the National Do-Not-Call Registry who were called by Defendant FiveStrata and any purported consent information FiveStrata had concerning Ms. Kimble. In addition, prior to mediation, FiveStrata provided general information regarding the consent it purportedly obtained from the persons who were on the National-Do-Not-Call Registry and called by FiveStrata.

13. On August 18, 2023, defense counsel and I held a conference call with Judge Rosen to discuss our respective positions and Judge Rosen's expectations prior to and at the mediation.

Prior to the mediation, Plaintiff's counsel submitted a 14-page mediation statement to Judge Rosen and a separate mediation statement to defense counsel. I also received and reviewed the mediation statements of both Defendants. Prior to mediation, Plaintiff's counsel also made a class-wide settlement demand after receiving the necessary information from opposing counsel.

14. The parties mediated the case before Judge Rosen on September 21, 2023. Ms. Kimble arrived at 8:30 a.m. before the mediation began at 9:00 a.m. The parties had hard-fought and extensive settlement discussions throughout the day.

15. Toward the end of the mediation, Judge Rosen recommended to Plaintiff's counsel and Plaintiff the terms of the settlement upon which he recommended settling the case. Ms. Kimble advised Judge Rosen she would accept the terms he recommended. Ms. Kimble stayed at the mediation until after 5:00 p.m. The parties agreed to the essential terms of a settlement on the terms recommended by Judge Rosen.

16. After mediation, the parties began drafting the more comprehensive settlement agreement and negotiating certain terms. The parties required Judge Rosen's assistance to work through and resolve these issues. Ultimately, the parties entered into a settlement agreement on terms recommended by Judge Rosen.

17. The parties have since worked diligently to formally consummate their agreement via a written settlement agreement, which has now been completed and executed, and is submitted as part of Plaintiffs' preliminary approval submission.

**The Settlement Terms, Notice Plan and Estimated Payments**

18. The Settlement Class consists of:

The 21,953 persons identified by the records of FiveStrata whose numbers were registered on the National Do-Not-Call Registry and such persons were called by FiveStrata allegedly on behalf of First American ("Settlement Class").

5

Settlement Agreement, Section 3.

19. Each member of the Settlement Class who submits a valid claim will receive significant relief under the terms of the settlement. Defendants, through Atticus, will create a settlement fund of $700,000.00. No amount of this fund will revert to Defendants. Each class member who submits a valid claim will receive a *pro rata* share of the remaining fund after accounting for the cost of settlement administration, a representative service award and Plaintiff's counsel's attorneys' fees and reasonable litigation expenses. *Id.* at Section 8.

20. The Settlement Class members who do not opt out of the settlement will release Defendants (and those acting on their behalf) from certain past claims regarding any communications sent to, received or transmitted to them by or on behalf of Defendants (and those acting on their behalf). *See id.* at Section 19.

21. The parties' counsel have agreed to use Atticus to serve as the settlement administrator in this matter. Atticus prepared a bid for $55,842.00 to administer the settlement as to the 21,953 class members. A copy of Atticus's bid is attached to this declaration as Exhibit A.

22. Counsel have worked with Atticus to develop a robust notice program with the goal of receiving as many claims as possible. This process includes mailing the class notice and claim form to the last known address of each putative class member, running the address through a national change of address database if the notice is undeliverable and resending the notice to the new address, to the extent such an address is available. In addition, the class notice and claim form will also be e-mailed to the last known e-mail address in the records of Defendant FiveStrata, LLC, to the extent available. In other words, many class members may receive notice in two forms so as to ensure they are notified of this settlement.

23. Atticus will also create and maintain a settlement website. The settlement website will include a copy of the operative complaint, settlement agreement, class notice, claim form and other documents relevant to the settlement. In addition, the settlement will contain important dates and deadlines and will also provide answers to common questions regarding the settlement. The website will also include contact information for Plaintiff's counsel and the settlement administrator. The website will also include the options to upload a claim form or to submit a claim directly through the website.

24. In addition, counsel have developed a claim process that is simple for the members of the settlement class. The class member simply needs to sign the claim form and verify their name, address, and the phone number at which they received the calls at issue. The claim form can also be submitted in a variety of ways – by mail, being uploaded through the settlement website or by submitting a claim directly on the settlement website.

25. I have been in direct contact with Chris Longley, the CEO of Atticus Administration, LLC ("Atticus"). Atticus has served as the settlement administrator for numerous class action settlements, including TCPA cases. Mr. Longley has advised me that an average claim rate in a TCPA case is 7-8% with a typical range of 5-10%. This is consistent with my own personal experience as well as with my review of certain TCPA cases. *See Vasco v. Power Home Remodeling Grp. LLC*, 2016 WL 5930876, at *12 (E.D. Pa. Oct. 12, 2016) (9% claim rate); *Lee v. Glob. Tel*Link Corp.*, 2018 WL 4625677, at *7 (C.D. Cal. Sep. 24, 2018) (1.8% claim rate); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) (7.7% claim rate).

26. Given this robust notice plan and the ease for claim submissions, I hope that the claims rate exceeds the typical claims rate in TCPA cases of 5-10%. As detailed further below, while counsel may seek up to $233,333.33 in attorneys' fees plus their reasonable litigation

expenses, counsel will only be seeking $195,000.00 in attorneys' fees, plus their reasonable litigation expenses of up to $18,000.00. In addition, while the representative Plaintiff may seek up to $6,000.00 for her service in this case, at the recommendation of Judge Rosen, she will only be seeking $5,000.00. In addition, Atticus has agreed to administer the settlement amount for $55,842.00.

27. The total of these amounts is $273,842.00. After subtracting this amount from the $700,000 settlement fund, this leaves a total of $426,158.00 to pay class members' claims. At a claims rate of 20% (4,391 claims), each class member who submits a valid claim would receive a payment of $97.05. At a claims rate of 15% (3,293 claims), each class member who submits a valid claim would receive a payment of $129.41. At a claims rate of 10% (2,195 claims), each class member who submits a valid claim would receive a payment of $194.15.

28. Given the robust notice plan, the ease of submitting claims, and the significant relief afforded, I am hopeful that the claim rate will exceed the average rate. As such, in the class notice we have advised that we estimate the payment for each person who submits a valid claim will be approximately $110 (between a 15% and 20% claims rate). Of course, that amount may be more or less depending on the number of claims submitted.

29. Plaintiff's counsel strongly believe this is an excellent result for the putative class, particularly given the many risk factors discussed below.

### Service Award and Class Counsel Fees and Expenses

30. Pursuant to the parties' agreement, subject to Court approval, Plaintiff may seek an award of up to $6,000.00 for her service as the class representative and class counsel may seek up to $233,333.33, plus their reasonable litigation expenses.

31. Plaintiff and her counsel, will, however, seek less than these amounts. Plaintiff will seek $5,000.00 for her service as the class representative. Counsel will seek $195,000.00 for their attorneys' fees and up to $18,000.00 in reasonable litigation expenses. Counsel's litigation expenses may be less than $18,000.00 at the time of final approval, but these amounts have yet to be finalized. To date, JAMS has billed Plaintiff's counsel $11,698.96 for Judge Rosen's services in mediating this case, through September 29. It is possible JAMS will send another bill as Plaintiff's counsel has worked with Judge Rosen since September 29 to finalize the specific terms of the settlement agreement. In addition, counsel may incur additional expense for traveling to Detroit in the future in connection with this case. In short, at the time of final approval, Plaintiff's counsel will submit a final bill detailing their reasonable litigation expenses and will not seek more than $18,000.00 for said expenses.

### **Factors Supporting Approval of the Settlement**

32. The risk of continuing to pursue this case and not reaching a settlement was and remains substantial. The law is quickly-evolving in TCPA cases and courts often reach conflicting rulings regarding the issues presented in this case. Some of these risks are identified below.

33. First, while Plaintiff received calls on her cell phones despite her phone number being registered on the National Do-Not-Call Registry, some courts hold that cell phones are afforded the protections of the Do-Not-Call Registry, while other courts hold cell phones are not afforded such protections. *Compare Tessu v. AdaptHealth, LLC*, 2023 WL 5337121, at *5 (D. Md. Aug. 17, 2023) *with Cunningham v. Politi*, 2019 WL 2519702, at *4 (E.D. Tex. Apr. 26, 2019).

34. Second, Defendants provided information (albeit disputed) that Plaintiff and the putative class members each provided the requisite form of consent to be contacted. *See generally Herrick v. QLess, Inc.*, 216 F. Supp. 3d 816, 818 (E.D. Mich. 2016) (noting that under the TCPA,

9

advertising calls may be placed upon obtaining the recipient's prior express written consent to receive such calls). Had Defendants established consent, Plaintiff and the class members may not receive any recovery.

35. Third, and relatedly, class certification was not a certainty in light of the consent-related information provided by Defendants. *See Gordon v. Caribbean Cruise Line, Inc.*, 2019 WL 498937, at *10 (N.D. Ill. Feb. 8, 2019) (different proofs for different purported "consent" information creates various "mini-trials")

36. Fourth, there was no guarantee that Plaintiff would be able to establish Defendant First American was vicariously liable for the calls placed by Defendant FirstStrata. Courts have reached different results as to applicability of vicarious liability in TCPA cases. *Compare Williams v. PillPack LLC*, 644 F. Supp.3d 845, 851-56 (W.D. Wash. 2022) (genuine issue of material fact exists as to vicarious liability in TCPA case) *with Reo v. Caribbean Cruise Line, Inc.*, 2016 WL 1109042, at *5 (N.D. Ohio Mar. 18, 2016) (insufficient allegations of vicarious liability in TCPA case).

37. Finally, Defendant FiveStrata retained experienced and effective counsel in Herman D. Hoffman of Varnum LLP and Defendant First American retained experienced and effective counsel in Mark Silver of Dentons and Mike Turco of Brooks Wilkins Sharkey & Turco PLLC. Absent settlement, defense counsel would have continued to put forward several grounds for avoiding both liability and class certification. Indeed, Defendants already filed multiple motions to dismiss in the case and Defendant FiveStrata filed a motion to stay discovery.

38. Assuming *arguendo* that class certification could have been obtained and sustained over any appeals or decertification motions, the next hurdle would be to establish class-wide liability and damages.

39. This settlement was not reached until Plaintiffs' counsel had conducted extensive analysis and investigation, thoroughly researched the law and facts, and assessed the risks of prevailing at both the district court and appellate levels, and the time and expense of doing so.

40. Plaintiff's counsels' analysis leads to the conclusion that the proposed settlement is a fair and reasonable result for the putative class. In the end, the risk assessment process conducted by counsel resulted in the conclusion that the proposed settlement is the best result for the class. This is true for several reasons, including the risk of losing at the class certification, liability, or damages stages, including on appeal.

41. Based upon these and other factors and considerations, I believe the settlement warrants preliminary approval.

As provided by 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 18, 2023

Christopher E. Roberts
croberts@butschroberts.com

# EXHIBIT A

Atticus Administration, LLC
Chris Longley - CEO

**Kimball v. Five Strata & First American**

Prepared for

**Christopher E. Roberts| Attorney**
croberts@butschroberts.com
P: 314.863.5700

Butsch Roberts & Associates LLC
231 S. Bemiston Avenue, Suite 260
Clayton, MO 63105



Class Action Administration

Estimate E2023-09-E15
Kimball v. Five Strata & First American

Prepared on October 12, 2023
By Chris Longley – CEO | Atticus Administration LLC

# Estimate Summary

## Atticus Services & Cost Description

| | |
|---|---|
| NOTICE MAILING-POSTCARD (Mailing First Class) | $31,213 |
| Initial Notice – 7pg (includes a claim form) | Included |
| Undeliverables catalogued and skip-traced and remails | Included |
| Notice via Email (to all valid email addresses) | Included |
| English only | Included |
| PROJECT MANAGEMENT/ADMIN FEES/Technical | $5,400 |
| CLAIMS - including cures | $3,430 |
| CAFA (full scope) | $1,800 |
| COMMUNICATIONS | $4,974 |
| PO Box rental | Included |
| IVR and 800#, Live phone operators (claims period) | Included |
| Correspondence including call backs, Opt-Outs, Exclusions | Included |
| Website – claims filing capability & court documents | Included |
| FUND, TAX, EMPLOYMENT REPORTING | $1,560 |
| setup QSF, file annual tax returns | included |
| DISTRIBUTION | $7,465 |
| Digital disbursements and check printing (or vouchers), payment calculation & verification, bank fees, check reissues | included |
| **TOTAL:** | **$55,842** |

## Key Assumptions

- Class Size: **22,000 class members.**
- Notices in English only – 7-page packet (includes a claim form).  Notices also sent via Email.
- Data review, cleansing and preparing file for mailing; including NCOA,
- Undeliverable mail skip-traced and remailed for new address 'hits'.
- Includes full scope CAFA.
- Communications includes PO box rental and correspondence.  Also includes dedicated 800# with IVR and live operator coverage.
- Case website to host all court documents including long-form notice.  Website will also have claims filing functionality.
- Live operator phone coverage through claims period.
- Distribution sent to all class members that file a valid claim.
- Digital Disbursement (5 different options) encouraged. Otherwise, checks sent for distribution.

**Options**
- Addition of enhanced search/skip tracing services, an additional [range of] $850 to $2,400.

PRINT NAME

ROLE

Client Signature

Date

*By signing above, I understand and agree to the pricing terms and services to be provided by Atticus Administration for the stated project.*

**PLEASE NOTE:** *This estimate and pricing is for the services stated herein and is valid for 30 days from the date of the estimate. If the Settlement Agreement or other service scope document(s) require additional services not included or priced in this estimate, we will separately price those scope changes and submit an updated quote prior to proceeding with the work.*

**Payment Terms:**
*40% at Notice*
*Final 60% at Distribution*



# Detailed Budget

## Atticus Services & Cost Description

| DESCRIPTION | UNITS | | SUBTOTAL |
|---|---|---|---|
| **NOTICE MAILING (Data Cleansing & Analysis) Mailed First Class** | 22,000 | Class Mbrs | $31,213 |
| Class Data List - Cleaning & Processing | 24.00 | Hrs | $2,964 |
| Class Notice Review - Proof/Finalize/Print Set-Up | 5.00 | Hrs | $618 |
| PRINTING Class Notice   7-page Notice | 22,000 | postcards | $9,724 |
| Postage Stamp (within 1 ounce max weight) | 22,000 | ct to mail | $12,590 |
| Email Notice | 22,000 | ct to email | $969 |
| Undeliverable/ NCOA /Return Mail Processing & Remail  (7%) | 1,540 | 7% of class | $1,627 |
| Notice Request Re-Mailing | 660 | 3% of class | $2,723 |
| **PROJECT MANAGEMENT** | 37 | hrs | $4,995 |
| **TECHNICAL SET UP (includes project kick-off)** | 3 | hrs | $405 |
| **CAFA  (50 states + applicable territories)** | | | $1,800 |
| **CLAIMS (including cures)** | 1,540 | 7% | $3,430 |
| **COMMUNICATIONS - English only** | | | $4,974 |
| Telephone - Set-Up + Monthly Fee | 6 Months | | $285 |
| Website (interactive) | 6 Months | | $2,500 |
| Telephone - Messages/IVR live operators | 6 Months | | $1,160 |
| PO Box - Setup & Monthly Fee | 6 Months | | $100 |
| Correspondence - Mail Telephone call backs | various | | $930 |
| **FUND, TREASURY & TAX Reporting** | | | $1,560 |
| Set-Up QSF | 4.00 | Hrs | $520 |
| Prepare/File Annual Fund Return | 8.00 | Hrs | $1,040 |
| **DISTRIBUTION, Payment Calculations & Reporting** | | | $7,465 |
| Cover Letter & Check - Design/Review/Finalize | 4.00 | Hrs | $494 |
| Payment Data - Calculate & Verify Payments | 14.00 | Hrs | $1,729 |
| Prepare Payment Reports + check reissues | 12.00 | Hrs | $1,482 |
| Check - Print Set-up/Printing/Mail Prep + replacements | 1,540 | checks | $1,091 |
| Check Mailing Postage (will be 1x mailings) | 1,540 | mailed | $922 |
| Check - Undeliverable/ NCOA /Return Mail Processing & Remail | 154 | 10.0% est | $963 |
| Bank Fees (Account Set-Up & Monthly Fee) | 9 | months | $784 |
| **DATA STORAGE** | n/a | | $0 |
| | **TOTAL** | | **$55,842** |

## Operating Assumptions

- Class Size: **22,000 - class members.**
- Class Notice, 7-page long-form includes a claim form.  Notices also sent via Email (to all valid email addresses).
- Notice in English only.
- Claims rate anticipated at 7%.
- Includes full CAFA filings.
- Data review, cleansing, NCOA and preparing file for mailing.  Returned or undeliverable mail will be skip-traced.
- Communications includes, PO BOX, Mail Correspondence.  Also includes dedicated 800# and IVR.   Live operator phone coverage during claims period.
- Project management assumes 68 hours at a blended rate of $135 per hour.   Includes summary reporting on a weekly basis.
- Qualified Settlement fund assumes 6 months.  Price includes tax reporting both state and federal returns. All bank fees are included in pricing.
- Disbursement includes positive pay "anti-fraud" features.
- Digital payments options available upon request.



# Thank you



Chris Longley – CEO

612-315-9007 (Direct)
651-755-2552 (Cell)
clongley@atticusadmin.com

1250 Northland Drive Suite 240
Mendota Heights MN 55120

www.atticusadmin.com