UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCIA KIMBLE,

                Plaintiff,                      Case Number 23-10037
                                                        Honorable David M. Lawson

v.

FIRST AMERICAN HOME WARRANTY CORP.
and FIVESTRATA LLC,

                Defendants.

_____/

**OPINION AND ORDER GRANTING UNOPPOSED MOTIONS FOR CONDITIONAL
CERTIFICATION OF SETTLEMENT CLASS AND TO APPROVE NOTICE OF
CLASS ACTION SETTLEMENT AGREEMENT, SETTING HEARING DATE,
AND AUTHORIZING NOTICE TO CLASS MEMBERS**

      This case involves the common irritant of unwelcome solicitation calls from merchants

seeking to generate sales leads. That practice, which proliferated with technological developments

like robocallers and autodialers, prompted Congress to find that unrestricted telemarketing could

amount to "an intrusive invasion of privacy." Pub. L. 102-243 § 2, ¶ 5. It responded to perceived

consumer outrage by enacting the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227,

and authorized the Federal Communications Commission to enact implementing regulations, *id.* §

277(c)(1); *see Dickson v. Direct Energy, LP*, 69 F.4th 338, 341 (6th Cir. 2023). One such

regulation allows residential telephone users to register their phone number on a do-not-call

registry, it requires telemarketers to maintain a list of those subscribers, and it prohibits unsolicited

calls to those phone numbers. 47 C.F.R. § 64.1200(d). Plaintiff Marcia Kimble says that she took

advantage of those protections, but the defendants contacted her anyway in violation of the law.

That intrusion on her privacy prompted her to file the present lawsuit for herself and on behalf of

all others who received like treatment at the defendants' hands. Through discovery, the parties

identified nearly 22,000 potential class members who received the offending calls after registering their phone numbers. The parties engaged in settlement negotiations, and, with the help of a mediator, they reached a settlement on behalf of the class, which they now ask the Court to approve.

The plaintiff filed an unopposed motion to conditionally certify a settlement class and to preliminarily approve a class settlement agreement, appoint a settlement administrator, authorize notice of a class action settlement, and set a date for a final fairness hearing. The Court heard the parties' arguments on January 17, 2024. The defendants appeared and signaled their lack of opposition. The plaintiff has presented an adequate basis to certify a settlement class, and she has shown that the settlement proposal merits approval. Therefore, the Court will certify the settlement class, grant preliminary approval of the proposed settlement, authorize the notice, with some minor modifications, and set a date for a final hearing.

## I. Background

On January 6, 2023, plaintiff Marcia Kimble filed her complaint in this case on behalf of similarly situated individuals who had received calls from the First American Home Warranty Corporation despite being registered on the Federal Do-Not-Call Registry. She brought one claim under section 227(c)(5) of the Telephone Consumer Protection Act seeking statutory damages and an order enjoining future violations. Kimble filed an amended complaint on April 6, 2023, adding FiveStrata LLC as a co-defendant. She alleged that FiveStrata acted as First American's agent and placed many of the unwanted calls. On June 19, 2023, the plaintiff filed a second amended complaint. The defendants subsequently filed motions to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Concurrently, FiveStrata filed a motion to stay discovery pending resolution of its motion to dismiss or, in the alternative, to bifurcate "class" and

"merits" discovery.  During a July 18, 2023 status conference, the Court informed the parties that the proceedings would not be bifurcated and directed them to attempt mediation.  According to counsel for the plaintiff, the parties engaged in day-long mediation with a mediator on September 21, 2023.  As a result of the mediation, the defendants agreed to create a settlement fund of $700,000 to pay class members' claims, the cost of settlement administration, a representative service award, counsel's attorneys' fees, and litigation expenses.  None of the $700,000.00 will revert to the defendants.

On October 19, 2023, the parties filed a joint motion to stay proceedings until the adjudication of the present motion, which the Court granted.  All deadlines on the dispositive motions presently are suspended pending the adjudication of the present motion for preliminary approval of the proposed class settlement.

The terms of the proposed settlement include the following:

- The defendants agree to create a settlement fund of $700,000 to pay class members' claims, the cost of settlement administration, a representative service award, counsel's attorney's fees, and litigation expenses.

- None of the $700,000.00 will revert to the defendants.

- The settlement funds also will be reduced by no more than $18,000 for reimbursement of litigation expenses.

- The fee of the claims administrator, Atticus Administration, LLC., will be no more than $55,842.

- The named plaintiff will receive an incentive award of $5,000.

- The plaintiff and class members will release all asserted and potential claims arising out of the allegations in the amended complaint, but the defendants reserve the right to rescind the settlement agreement if more than 10% of the settlement class exercise their right to opt out of the class.

- All class members making timely claims will receive a *pro rata* cash payment of the net balance of the settlement fund, which the parties estimate will be approximately $90 to $110 based on an estimated 15 to 20% claims rate.

- Class counsel will seek attorney's fees of no more than $195,000, which is 27.85% of the settlement fund.

Plaintiff's counsel also states that the claims rate in these cases often is substantially lower, which would make the individual *pro rata* distribution greater.

## II.  Conditional Class Certification

On October 18, 2023, the plaintiff filed the present unopposed motion to conditionally certify the settlement class, to appoint class counsel, and for preliminary approval of the class action settlement.  They propose a settlement class defined as:

> The 21,953 persons identified by the records of FiveStrata whose [telephone] numbers were registered in the National Do-Not-Call Registry and such persons were called by FiveStrata on behalf of First American.

"The class action is a creature of the Federal Rules of Civil Procedure."  *United States v. Sanchez-Gomez*, 584 U.S. 381, 387 (2018).  "It is an 'exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only,' and 'provides a procedure by which the court may exercise . . . jurisdiction over the various individual claims in a single proceeding.'"  *Ibid.* (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)).  "The certification of a suit as a class action has important consequences for the unnamed members of the class."  *Ibid.* (quoting *Sosna v. Iowa*, 419 U.S. 393, 399 n.8 (1975)).

Federal Rule of Civil Procedure 23(e) imposes certain "rules for the settlement, dismissal, or compromise of class claims."  *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016).  "It requires that class-action claims 'may be settled, voluntarily dismissed, or compromised only with the court's approval.'"  *Ibid.* (quoting Fed. R. Civ. P. 23(e)).  The approval of a proposed settlement ordinarily involves a two-stage procedure.  "First, counsel submit the proposed terms of [the] settlement and the judge makes a preliminary fairness evaluation . . . .  Once the judge is

satisfied as to the . . . results of the initial inquiry into the fairness, reasonableness, and adequacy of the settlement, notice of a formal Rule 23(e) fairness hearing is given to the class members." *Annotated Manual for Complex Litigation* (4th ed.) §§ 21.632-.633 (2023); *see also Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001).

Approval of a class settlement requires the Court to determine first if a settlement class can be certified, that is, that the proposed settlement class meets the requirements of Rule 23(a) and (b), and then the Court must assess the fairness of the proposed settlement.

"Any class certification must satisfy Rule 23(a)'s requirement of numerosity, commonality, typicality, and adequate representation." *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 278 (6th Cir. 2018). "Further, a class action must fit under at least one of the categories identified in Rule 23(b)." *Ibid*. "The district court must conduct 'a rigorous analysis' as to all the requirements of Rule 23." *Id*. at 278-79 (quoting *Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 630 (6th Cir. 2011)). "[T]he party seeking class certification . . . bears the burden of 'affirmatively demonstrat[ing]' compliance with Rule 23." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466-67 (6th Cir. 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

A. Rule 23(a) Requirements

The first prerequisite to class certification under Rule 23(a) is numerosity. *Olden v. LaFarge Corp.*, 203 F.R.D. 254, 268 (E.D. Mich. 2001), *aff'd*, 383 F.3d 495 (6th Cir. 2004). There is no strict numerical test to determine when the class is large enough or too numerous to be joined under the Federal Rules of Civil Procedure. *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n.24 (6th Cir. 1976).

The proposed class comprising 21,953 individuals who were registered on the National Do-Not-Call Registry and who received unsolicited phone calls from the defendants satisfies this requirement. The number of absent class members is so numerous that joinder of all those persons as individual plaintiffs would be impracticable. Although the numerosity requirement "'requires examination of the specific facts of each case and imposes no absolute limitations,' . . . [w]hen class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1079 (6th Cir. 1996) (quoting *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980)). The plaintiff has established "that there are *in fact* sufficiently numerous parties" to make joinder impractical in this case. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original); *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012) (noting that a class of 69 members would be sufficient to meet the numerosity requirement).

The second prerequisite for class certification, commonality, simply means that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This provision does not demand that all questions of law and fact raised in the complaint are common. *Olden,* 203 F.R.D. at 269. "The standard is not [that] demanding. 'Rule 23(a) simply requires a common question of law or fact.'" *Rockey v. Courtesy Motors, In*c., 199 F.R.D. 578, 583 (W.D. Mich. 2001) (quoting *Bittinger v. Tecumseh Prods. Co*., 123 F.3d 877, 884 (6th Cir. 1997)).

This requirement likewise is satisfied. There are prominent common questions of law and fact affecting all of the class members that will bear on the defendants' liability. The core question in this case is whether the defendants' telephone solicitations were unlawful under the TCPA. The plaintiffs identify several related common questions, including whether:

(1) FiveStrata's calls were part of a campaign of "telephone solicitations" as defined by 47 U.S.C. § 227(a)(4); (2) the contract between FiveStrata and First

> American was sufficient to create an agency relationship for purposes of vicarious
> liability; (3) FiveStrata was acting with actual authority of First American; (4) First
> American ratified FiveStrata's conduct; (5) FiveStrata had policies and procedures
> in place to warrant application of the "safe harbor"; (6) First American had policies
> and procedures in place to warrant the application of the safe harbor; and, (7) the
> calls at issue violate Section 227(c) of the TCPA and the TCPA's corresponding
> regulations.

ECF No. 43, PageID.344-45.  These issues are "capable of classwide resolution" because deciding them will determine the "validity of each one of the claims in one stroke." *Ibid.* (quoting *Dukes*, 564 U.S. at 350).  The class plaintiffs all were registered on the national Do-No-Call Registry, and all would have received unwanted telephone calls from the defendants.  The legality of these calls is the fundamental issue in this case.  Moreover, courts frequently find that TCPA actions raise common issues for class consideration.  *See, e.g.*, *Bowman v. Art Van Furniture, Inc.*, No. 17-11630, 2018 WL 6445389, at *2 (E.D. Mich. Dec. 10, 2018); *Compressor Eng'g Corp. v. Thomas*, 319 F.R.D. 511, 525-26 (E.D. Mich. 2016*); Avio Inc. v. Alfoccino, Inc.*, 311 F.R.D. 434, 444 (E.D. Mich. 2015); *Michael v. WM Healthcare Sols.*, No. 10-638, 2014 WL 497031, at *6 (S.D. Ohio Feb. 7, 2014); *Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 444 (N.D. Ohio 2012); *cf. Sowders v. Scratch Fin., Inc.*, No. 23-56, 2023 WL 7525900, at * 8 (S.D. Ohio Nov. 14, 2023) (refusing to strike class allegations at pleading stage because of the prevalence of common issues).  Although the parties note that the case may be feature some individualized questions, such as whether a particular plaintiff consented to the communications, *see* Decl. of Christopher Roberts, ECF No. 43-2, PageID.409-10, the fact that an issue may apply to various class members differently does not defeat commonality, especially when it is a speculative defense.  *Bridging Communities, Inc. v. Top Flite Fin., Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016).

The third requirement — typicality — calls for a "sufficient relationship exist[ing] between the injury to the named plaintiff and conduct affecting the class, so that the court properly may

attribute a collective nature to the challenged conduct." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (internal quotes omitted); Fed. R. Civ. P. 23(a)(3). Although the named plaintiff's claims must fairly encompass the class members' claims, they need not always involve the same facts or law. *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998); *Senter*, 532 F.2d at 525 n.31.

The Supreme Court has explained that the commonality and typicality requirements "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "The test for typicality, like commonality, is not demanding." *Rockey*, 199 F.R.D. at 584.

Because the plaintiff's claims principally would focus on the propriety of the defendants' actions and application of their policies, they are sufficiently typical of all class members to be addressed in common. Plaintiff Marcia Kimble's experience receiving the unsolicited phone calls from the defendants after she registered her phone number on the Do-Not-Call Registry appears representative of the other putative plaintiffs' experiences. *See Compressor Eng'g Corp. v. Thomas*, 319 F.R.D. 511, 526 (E.D. Mich. 2016) (finding a plaintiff's claims typical where each potential class member was alleged to have received the same fax and each claim was premised on the same legal theory under the TCPA).

Under Rule 23(a)(4), the Court must "measure the adequacy of the class members' representation based upon two factors: '1) the representatives must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Dry Max Pampers Litig.*, 724

- 8 -

F.3d 713, 721 (6th Cir. 2013) (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th

Cir. 2013)).  "The Rule requires that 'the class members have interests that are not antagonistic to

one another.'"  *Ibid*.  "Thus, 'the linchpin of the adequacy requirement is the alignment of interests

and incentives between the representative plaintiffs and the rest of the class.'"  *Ibid*. (quoting

*Dewey v. Volkswagen AG*, 681 F.3d 170, 183 (3d Cir. 2012)).  "These requirements are scrutinized

more closely, not less, in cases involving a settlement class," because "'the need for the adequacy

of representation finding is particularly acute in settlement class situations.'"  *Ibid*. (quoting *In re*

*Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig*., 55 F.3d 768, 795 (1995)).

The named individual plaintiff and class representative adequately is positioned to

represent the class, and her interests sufficiently are aligned with them, since Kimble's interests

are identical to those of the other class members who also are seeking to enforce their rights under

the TCPA.  No conflicts of interest are apparent, and the plaintiff does not seek any preferential

treatment other than her reasonable service award.  *Cf. Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 626 (1997) (distinguishing cases where named plaintiffs' interests conflict with those of other

class members); *In re Dry Max Pampers Litig*., 724 F.3d at 722 (finding named plaintiffs

inadequate where they had incentives to compromise the interest of the class for personal gain).

Moreover, Kimble has been engaged actively in this litigation and during the mediation process.

Her counsel notes that her meticulous record-keeping was critical to the settlement.  Decl. of Jacob

U. Ginsburg, ECF No. 43-3, PageID.421-22.

Furthermore, she is represented by qualified attorneys with ample experience litigating

class-action and TCPA suits, particularly in Missouri.  *See* ECF No. 43-2, PageID.403, ECF No.

43-3, PageID.420-21.  Courts have found plaintiff's counsel to be experienced and capable.  *See,*

*e.g.*, Preliminary Approval Order, *Ruby v. Build-A-Bear, Inc.*, Case No. 4:21-cv-01152-JAR (E.D.

Case 2:23-cv-10037-DML-EAS   ECF No. 50, PageID.479   Filed 01/19/24   Page 10 of 21

Mo. March 28, 2023) (appointing Christopher Roberts class counsel). The record demonstrates that the plaintiff's attorneys are committed to prosecuting the class members' claims until there is a final, non-appealable resolution of the dispute in the present case.

### B. Rule 23(b) Requirements

The plaintiff argues that class certification is appropriate under Rule 23(b)(3). Rule 23(b)(3) authorizes class certification when common questions of law or fact "predominate over any questions affecting only individual members," and the collective approach is "superior" to other methods of adjudicating the controversy. *Sandusky Wellness Ctr.*, 863 F.3d at 466. "In discerning whether a putative class meets the predominance inquiry, courts are to assess 'the legal or factual questions that qualify each class member's case as a genuine controversy,' and assess whether those questions are 'subject to generalized proof, and thus applicable to the class as a whole.'" *Id.* at 468 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997); *Bridging Communities*, 843 F.3d at 1124). "'If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.'" *Ibid.* (quoting *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 998 (8th Cir. 2016)). The plaintiffs "need not prove that every element can be established by classwide proof," but "the key is to identify the substantive issues that will control the outcome." *Ibid.* (quotations omitted).

"In addition, Rule 23(b)(3) classes must also meet an implied ascertainability requirement." *Id.* at 466 (citing *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016)). That is because, "unlike (b)(1) and (b)(2) classes, (b)(3) class members are entitled to notice and are able to opt-out of the class." *Cole*, 839 F.3d at 541. "In the Rule 23(b)(3) context, ascertainability aids the inherent efficiencies of the class device by ensuring administrative feasibility, and . . . ascertainability is a requirement tied almost exclusively to the practical need to notify absent class

- 10 -

members and to allow those members a chance to opt-out and avoid the potential collateral estoppel effects of a final judgment." *Ibid.* "[T]he ascertainability requirement . . . necessitate[s] 'a class description [that is] sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Ibid.* (quoting *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012)).

The plaintiff has satisfied Rule 23(b)(3)'s requirements.  As discussed in the commonality inquiry above, the common questions about the defendants' liability under the TCPA predominate over any individual issues in the case.  These issues include whether the calls were "telephone solicitations" within the meaning of 47 U.S.C. § 227(a)(4), an inquiry which turns on the objective of the entire call campaign, whether there was an agency relationship between FiveStrata and First American that could make either or both liable, and the applicability of the statute's safe harbor defense, *see* 47 U.S.C. § 227(c)(5)(C).  These issues do not require proof as to any individual member.

Because the plaintiff has fulfilled the requirements of Rule 23(a) and (b), the Court will conditionally certify the settlement class, appoint Marcia Kimble as the class representative, and appoint her attorneys, Christopher E. Roberts and Jacob U. Ginsberg, as class counsel.

III.  Preliminary Approval of Proposed Settlement Agreement

The plaintiff also asks the Court conditionally to approve the proposed settlement and allow notice to be sent to absent class members.  "Approval is only warranted where the court determines, *inter alia*, that the proposed class settlement would be 'fair, reasonable, and adequate.'" *Whitlock*, 843 F.3d at 1093 (quoting Fed. R. Civ. P. 23(e)).  "Factors that guide this inquiry include: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the

- 11 -

opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Ibid*. (quoting *Int'l Union, UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).

Under the proposed settlement agreement, the defendants will create a settlement fund of $700,000 to pay class members' claims, the cost of settlement administration, a representative service award and counsel's attorneys' fees and litigation expenses. None of the $700,000 will revert to the defendants. Plaintiff's counsel will seek attorney's fees of not more than $195,000, which amounts to approximately 27.85% of the gross settlement fund. That amount would be less than the one-third contingent fee reflected in the agreement. The available settlement funds also will be reduced by approximately $18,000 in litigation expenses and $55,842 to be paid to the claims administrator, Atticus Administration, LLC. Additionally, the named plaintiff will receive an incentive award of $5,000, less than the $6,000 contemplated by the settlement agreement. The plaintiff has represented that the proposed claims administrator, Atticus Administration LLC of Minnesota, has extensive experience in administering class settlements, including TCPA class cases. Counsel elaborated on the experience and qualifications of the Atticus firm at the hearing to the Court's satisfaction.

The plaintiff has established that the proposed settlement is adequate, reasonable, and fair to the class. As an initial matter, it appears that the absent class members stand to receive approximately 2/3 of the total common settlement fund. The amount each claimant could receive is estimated to be $110, assuming a claims rate of approximately 17.5%. The amount ultimately may be higher, as plaintiff's counsel cites several TCPA cases where the final claim rate was substantially lower. At a 20% claim return rate, the payout would be around $90. The estimated payout, while modest, is not trivial in light of the absence of actual damages. The TCPA allows

statutory damages of "up to $500" for each violation of the Act. 47 U.S.C. § 227(c)(5)(B). Actual damages also may be recovered. But maximum damages are not automatic, and the parties have agreed through good-faith negotiations on a reasonable award. The award is fairly calculated to address the nominal injuries to the statutory rights of class members.

*First*, the risk of fraud and collusion is low. The parties have engaged in contested litigation: both defendants have pending motions to dismiss and have contested the discovery timeline. This discovery dispute was only resolved when the Court explained that it was unlikely to grant the defendants' request to bifurcate discovery and directed them to attempt mediation of the case with a private mediator. According to counsel, that mediation lasted a full day and required several follow-up consultations with the mediator to finalize the terms of a settlement.

*Second*, as for the complexity, expense, and duration of the litigation, at first blush, the issues here do not appear especially complex, and the complaint only contains one count. However, the plaintiff points out that TCPA claims often require protracted litigation. She argues that her case raises several complicated issues, such as the vicarious liability of First American and the potential for the defendants to raise individual consent defenses, which would require "mini-trials." *See Gordon v. Caribbean Cruise Line, Inc.*, No. 14 C 5848, 2019 WL 498937, at *10 (N.D. Ill. Feb. 8, 2019). Moreover, the early discovery dispute portends further battles. If the settlement agreement is not approved, protracted litigation is likely.

*Third,* the parties have engaged in significant formal discovery throughout the pendency of this litigation to explore the basis of the plaintiff's claims. The plaintiff and First American commenced discovery early in the case, which ultimately led to an amended pleading adding FiveStrata as a co-defendant. *See* Mot. to Approve Settlement, ECF No. 43, PageID.355. After the July status conference, the parties exchanged information relevant to ascertaining the

- 13 -

scope of the class and evaluating the plaintiff's claims. At this stage of the proceedings, the record was sufficient for the parties to identify the strength of the claims and defenses and to guide the parties' settlement negotiations.

*Fourth*, the plaintiff's prospects for success on the merits are uncertain. To start, First American may not be liable if it can show that FiveStrata was an independent contractor rather than an agent. *See Keating v. Peterson's NelNet*, 615 F. App'x 365, 371-72 (6th Cir. 2015) (explaining that liability under the TCPA does not extend to independent contractors). Next, the plaintiffs acknowledge that some courts have held that the TCPA's do-not-call protections do not apply to calls received on cell phones. *See, e.g.*, *Cunningham v. Politi*, No. 18-00362, 2019 WL 2519702, at *4 (E.D. Tex. Apr. 26, 2019). Other courts require a showing that an individual's cell phone number is used for residential purposes. *See Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1201 (M.D. Tenn. 2017). This issue could require further individualized assessment. Finally, the defendants have argued that at least some putative plaintiffs consented to receiving calls, although the plaintiff disputes that there is evidence of that. Decl. of Christopher Roberts, ECF No. 43-2, PageID.409-10. Considering these issues, the certainty that many of the class members will receive a recovery in the settlement outweighs the risks and costs posed by continued litigation.

*Fifth*, class counsel and the named plaintiff actively participated in the litigation and mediation and express their strong endorsements of the settlement.

*Sixth*, the views of absent class members are not yet known, but the notice period will provide ample opportunity for them to weigh in or object to the proposed settlement.

*Finally*, the public interest favors resolution of the matter by way of a settlement that will secure a substantial recovery for the class members while avoiding wasting considerable time and

expense by the parties and the Court, possibly only to reach the same end.  *See UAW*, 497 F.3d at 632 (noting that federal policy favors settlement of class actions); *Whitlock*, 843 F.3d at 1094 (noting that settlement agreements promote finality).  Approval of the settlement agreement, which will ensure some measure of compensation for many potential plaintiffs, also is consistent with the strong remedy in the form of statutory damages provided by Congress in the TCPA.  *See* 47 U.S.C. § 227(c)(5).

Also, the incentive award to the named plaintiff is somewhat less than was proposed during negotiations, mitigating any lingering concern that the plaintiff will enjoy a windfall at her fellow class members' expense.

### III.  Notice

"Due process requires the class notice to be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Pelzer v. Vassalle*, 655 F. App'x 352, 368 (6th Cir. 2016) (quoting *UAW*, 497 F.3d at 629).  The notice must "'fairly apprise the prospective members of the class of the terms of the proposed settlement' so that class members may come to their own conclusions about whether the settlement serves their interests."  *UAW*, 497 F.3d at 630 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975)).

The proposed settlement agreement states that class notice will be sent to class members via United States mail and email to their last-known addresses.  Proposed Settlement, ECF No. 49-1, PageID.449.  If the notice is undeliverable and is returned with a forwarding address, it will be re-mailed one time.  *Ibid.*  The notice provides a description of this lawsuit, a summary of the proposed settlement agreement, and directions on when and how to file written objections with the Court.  Class Notice, ECF No. 49-1, PageID.462-67.  There will also be a website, linked via a

QR code on the notice, that contains links to the claim form and a method to upload completed documents electronically.

There is some confusion over the deadline for class members to submit a claim, opt out, or object to the settlement. Most references to the timeline in the proposed settlement and notice form indicate that class members will have 90 days to respond, but there is a reference to a 60-day opt-out window in the proposed settlement agreement. *See* ECF No. 49-1, PageID.449. To avoid confusion, the Court will direct that the longer timeframe will be used across the board.

The form of notice attached to the proposed settlement agreement provides a description of this lawsuit, a summary of the proposed settlement agreement, and directions on when and how to file written objections with the Court. Class Notice, ECF No. 49-1, PageID.462-67. This method is reasonably calculated to provide notice of the class action and afford class members an opportunity to present objections, in compliance with Rule 23(e)(1). *See UAW*, 497 F.3d at 629-30 (upholding a notice that discussed the nature of the pending suit and summarized the settlement agreement); *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d at 1086 (upholding a notice that described the terms of the settlement, the reasons for class representatives' decision to settle, the legal effect of the settlement and the rights of the class members to voice their objections).

The plan for notifying absent class members proposed by the parties is reasonable. The notice is reasonably clear and otherwise conforms to the requirements of Rule 23(c)(2)(B) and 23(e). The proposed notice must be amended, however, to include the deadlines prescribed by this order.

## V. Conclusion

Accordingly, it is **ORDERED** that the plaintiff's unopposed motion to certify a settlement class and for preliminary approval of the proposed settlement agreement and procedure for

providing class notice (ECF No. 43) is **GRANTED**.  The proposed settlement agreement is **PRELIMINARILY APPROVED**, subject to objections by absent class members and except for the determination of the attorney's fees and costs.

It is further **ORDERED** that, pursuant to Federal Rule of Civil Procedure 23(b)(3), the following settlement class is conditionally certified in this case:

> The 21,953 persons identified by the records of FiveStrata whose telephone numbers were registered in the National Do-Not-Call Registry and who were called by FiveStrata on behalf of First American.

It is further **ORDERED** that counsel of record for the named plaintiff, namely attorneys Christopher E. Roberts and Jacob U. Ginsberg, are appointed as counsel for the designated settlement class.  Plaintiff Marcia Kimble is appointed as the class representative.

It is further **ORDERED** that Atticus Administration, LLC is **APPROVED** as the claims administrator for the settlement.

It is further **ORDERED** that **on or before January 26, 2024**, the defendants shall provide notice of this proposed class settlement to the appropriate state and federal authorities.  The defendants must file proof that they have provided the required notice with the Court, in compliance with the Class Action Fairness Act, 28 U.S.C. § 1715(b).

It is further **ORDERED** that plaintiff's counsel or their designated representative shall cause notice of the proposed settlement to be given to class members in the following manner:

> (a)  **On or before January 26, 2024**, a copy of the Notice of Class Action Settlement, substantially in the form attached as ECF No. 49-1, Page.ID.462-67 to the plaintiff's unopposed motion for preliminary approval of class settlement and notice, and modified as directed herein, must be mailed by first-class mail, with postage prepaid, to each class member; and by email to their last-known addresses. If the notice is undeliverable and is returned with a forwarding address, it must be re-mailed.  The class administrator shall ensure that the creation of a claims website is accomplished by that same date.

(b)  The notice to class members must explain that objections to, and requests to be excluded from, the class settlement must be filed with the Court and the parties' counsel **on or before April 30, 2024**.

It is further **ORDERED** that plaintiff's counsel shall file proof of mailing of the class notice in conformity with this order **on or before February 2, 2024**.

It is further **ORDERED** that the expenses of printing and mailing and publishing all notices required hereby shall be paid as described in the settlement agreement, with no more than $55,842 coming from the settlement fund.

It is further **ORDERED** that the notice of class settlement must inform the absent class members that Proofs of Claim and supporting documentation must be submitted **on or before April 30, 2024**.  Proofs of Claim sent by mail shall be deemed submitted when postmarked if mailed by first class, registered or certified mail, postage prepaid, addressed in accordance with the instructions in the Proof of Claim.  All other Proofs of Claim shall be deemed submitted at the time of actual receipt.

It is further **ORDERED** that, **on or before May 14, 2024**, plaintiff's counsel must file a motion for final approval of the settlement identifying absent class members who opt out or object. The defendant's response, if the motion is opposed, must be filed **on or before May 28, 2024**, and the plaintiff's reply, if any, must be filed **on or before June 4, 2024**.

It is further **ORDERED** that a hearing shall be held at **1:00 p.m.** on **Thursday, June 20, 2024** in Room 767 of the Theodore Levin United States Courthouse, 231 West Lafayette Blvd., Detroit, Michigan 48226, to consider any objections to the settlement agreement and to determine whether the settlement agreement should be finally approved as having been negotiated in good faith and as being fair, reasonable, and in the best interest of the class members.

It is further **ORDERED** that any class member may appear at the settlement hearing and be heard to the extent allowed by this Court, either in support of or in opposition to the good faith, fairness, reasonableness, and adequacy of the proposed settlement or the plaintiff's counsel's application for an award of attorney's fees, reimbursement of expenses, and an incentive award to the representative plaintiff.  However, no class member shall be entitled to be heard or entitled to contest the approval of the terms and conditions of the proposed settlement or the judgment to be entered pursuant thereto approving the same, or the plaintiff's counsel's fee, expense and incentive award application, unless, **on or before April 30, 2024**, such person: (a) has filed with the Clerk of Court a notice of such person's intention to appear, together with a statement that indicates the basis for such opposition along with any supporting documentation, and (b) has served copies of such notice, statement, and documentation, together with copies of any other pleadings that such person has filed with the Clerk of the Court and each parties' counsel at the following addresses:

> Clerk of the Court
> United States District Court
> 231 Lafayette Boulevard
> Detroit, MI 48226
> Re: Marcia Kimble v. First American Home Warranty Corp. and
> FiveStrata LLC
> Case Number 23-10037
>
> _Counsel for the Plaintiff_
> Christopher E. Roberts
> Butsch Roberts & Associates LLC
> 231 South Bemiston Avenue, Suite 260
> Clayton, MO 63105
> 314-863-5700
> Email: croberts@butschroberts.com
>
> Jacob U. Ginsburg
> Kimmel & Silverman PA
> 30 E. Butler Ave.
> Ambler, PA 19002
> 267-468-5374
> Email: jginsburg@creditlaw.com

*Counsel for the Defendant First American Home Warranty*

Mark A Silver
Dentons US LLP
303 Peachtree Street, NE, Suite 5300
Atlanta, GA 30308
404-527-4000
Fax: 404-527-4198
Email: mark.silver@dentons.com

Michael R. Turco
Brooks Wilkins Sharkey & Turco
401 S. Old Woodward Avenue, Suite 400
Birmingham, MI 48009
248-971-1800
Fax: 248-971-1801
Email: turco@bwst-law.com

*Counsel for the Defendant FiveStrata LLC*

Herman D. Hofman
Varnum Attorneys At Law
Bridgewater Place
P.O. Box 352
Grand Rapids, MI 49501-0352
616-336-6375
Fax: 616-336-7000
Email: hdhofman@varnumlaw.com

Any class member who does not serve and file an objection to the proposed settlement of the litigation or the fee, expense and incentive award application, in the manner provided for herein, shall be deemed to have waived the right to object, including the right to appeal, and shall be forever foreclosed from making any objection to the settlement, the fee, expense and incentive award application, or to any order or judgment filed or entered thereon, as applicable. Counsel for the plaintiff must notify all absent class members of these requirements.

It is further **ORDERED** that applications for incentive awards, attorney's fees, or reimbursable expenses under Rule 23(h) must be filed **on or before May 30, 2024**. Counsel must

provide notice to class members in accordance with Fed. R. Civ. P. 23(h)(1).  No fees or expenses in excess of the amounts set forth above may be sought.

It is further **ORDERED** that class counsel shall be responsible for maintaining a file of all responses to the notice of settlement and any and all other written communications received from the class members.  Class counsel immediately shall provide copies of such responses and communications to defendants' counsel.

It is further **ORDERED** that the Court reserves the right to adjourn the settlement hearing from time to time without further notice and to approve the settlement agreement at or after the settlement hearing.

It is further **ORDERED** that the motions to dismiss (ECF No. 12, 28, 34, 35) and the motion to stay discovery (ECF No. 36) are **DISMISSED as moot**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  January 19, 2024