# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| MARCIA KIMBLE, *individually, and on behalf of all others similarly situated,* | Case. No. 2:23-cv-10037-DML-EAS |
| Plaintiff, | District Judge David M. Lawson |
| v. | |
| FIRST AMERICAN HOME WARRANTY CORP. and FIVESTRATA LLC, | Magistrate Judge Elizabeth A. Stafford |
| Defendants. | |

## PLAINTIFF'S UNOPPOSED MOTION FOR
## FINAL APPROVAL OF CLASS SETTLEMENT

Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Marcia Kimble ("Plaintiff" or "Ms. Kimble") submits her unopposed motion for final approval of a class action settlement and her supporting brief. This motion concerns final approval of a class action settlement between Plaintiff and Defendants First American Home Warranty Corp. ("FAHWC") and FiveStrata, LLC ("FiveStrata") (collectively "Defendants") that was previously preliminarily approved by the Court as "adequate, reasonable, and fair to the class." Doc. 50, p. 12.

The Rule 23(a), (b), and (e) factors that were deemed satisfied by the Court in the Court's Preliminary Approval Order remain satisfied. The only factor not addressed in the Court's Preliminary Approval Order, "the reaction of absent class

1

members" has now been satisfied after implementing the parties' thorough notice. As a result of that notice plan, over 98% of the class members received notice of the settlement and zero class members objected to the settlement. Moreover, the thoroughness of the notice plan resulted in a robust claims rate of nearly 16%, a rate much higher than a typical TCPA class action settlement. Ultimately, it is not surprising that there were no objections to the settlement and a high claim rate because the relief afforded is significant. Here, each class member who submitted a valid claim will receive approximately $129.33.

The elements of Rule 23(a), (b) and (e) remain satisfied at this stage of final approval. The settlement continues to be "adequate, reasonable, and fair to the class" (Doc. 50, p. 12). The Court should therefore grant Plaintiff's Unopposed Motion for Final Approval of Class Settlement.

# PLAINTIFF'S BRIEF IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT

## I. STATEMENT OF ISSUES PRESENTED

1. Does the Agreement between the parties on the terms recommended by Judge Gerald E. Rosen (Ret.), and which was previously preliminarily approved by this Court as "adequate, reasonable, and fair to the class," warrant this Court's final approval?

2. Are the requirements of Federal Rule of Civil Procedure 23(a), (b)(3) and (e) still satisfied to warrant final approval of the parties' Settlement?

## II. CONTROLLING AUTHORITIES

The authorities set forth in this brief all carry equal weight. However, pursuant to Federal Rule of Civil Procedure 23, this Court should grant final approval of the parties' settlement.

## III. INTRODUCTION

Plaintiff seeks final approval of the parties' class action Settlement Agreement ("Agreement" or "Settlement"). A copy of the Agreement was previously provided to the Court. *See* Doc. 49-1. The Court, finding the requirements of Rule 23(a), (b) and (e) were satisfied, granted preliminary approval of the Settlement. Doc. 50, pp. 5-16.

The Settlement and the Court's Preliminary Approval Order provided that class members who submitted valid claims would receive a *pro rata* share of a common non-reversionary fund of $700,000.00 paid by Defendants. *Id.* at pp. 3, 12. After a thorough notice plan was carried out by Atticus Administration, LLC ("the Administrator"). *See* Ex. 1, Declaration of Bryn Bridley, ¶¶ 4-11; *see also* Doc. 52-1, Declaration of Bryn Bridley, ¶¶ 4-15, and Exhibits A and B. This notice plan resulted in most class members receiving notice in two forms – mail and e-mail, and notice reaching over 98% of the class members. Ex. 1, Bridley Declaration, ¶¶ 4-6.

The elements of Rule 23(a), (b) and (e) remain satisfied for settlement purposes. The strength of the Settlement was further evidence after a thorough notice plan reached over 98% of the over 20,000 class members. *Id.* at ¶ 6. Even with such a thorough notice plan, class members objected to the settlement and only two-tenths of one percent of class members opted out of the settlement. *Id.* at ¶¶ 7-8. Moreover, the claims rate, which was close to 16% (15.87%) was significantly greater than most TCPA settlements. *See id.* at ¶¶ 4-16, 12-14; *see* Doc. 43-2, Roberts Declaration, ¶¶ 25-26. The class members who submitted valid claims will ultimately receive a payment of approximately $129, which "is not trivial in light of the absence of actual damages." *See* Doc. 50, p. 12. Accordingly, for the reasons set forth in this brief, in Plaintiff's Motion for Preliminary Approval and in the Court's

4

Order granting Plaintiff's Motion for Preliminary Approval, the Settlement now warrants the Court's final approval.

## IV. BACKGROUND AND PROCEDURAL HISTORY

### A. This Lawsuit and Settlement Negotiations

For purposes of brevity, a detailed background of the lawsuit and the settlement negotiations were detailed in Plaintiff's Motion for Preliminary Approval and the Court's Preliminary Approval Order. Doc. 43, pp. 4-5; Doc. 43-2, Roberts Declaration, ¶¶ 12-17; Doc. 43-3, Ginsburg Declaration, ¶¶ 14-44; Doc. 50, pp. 1-3. The settlement terms agreed upon were those recommended by Judge Gerald E. Rosen (Ret.) after presiding over an all-day mediation conducted between the parties. Doc. 43, pp. 2, 4, 6, 15-16; Doc. 43-1, Roberts Declaration, ¶ 15.

### B. Summary of the Settlement Terms

Through the efforts of Judge Rosen and counsel, the parties agreed on a non-reversionary $700,000.00 class settlement fund. *See* Doc. 43, p. 6, 15-16; Doc. 49-1, Settlement Agreement, Section 8; Doc. 50, pp. 3, 12. The fund will be used to pay class members claims, the cost of settlement administration, a representative service award, and class counsel's attorneys' fees and reasonable litigation expenses. *See id.* Settlement Class members who submitted valid claims will receive a *pro-rata* share of the fund after accounting for the cost of administration, a representative service award, and attorneys' fees and litigation expenses. *See id.*

### C. This Court's Preliminary Approval Order

The Court held a hearing on Plaintiff's Motion for Preliminary Approval of Class Action Settlement on January 17, 2024. Doc. 50, p. 2. Thereafter, on January 19, 2024, the Court granted Plaintiff's motion and preliminarily certified the following class:

> The 21,953 persons identified by the records of FiveStrata whose telephone numbers were registered in the National Do-Not-Call Registry and such persons were called by FiveStrata on behalf of First American.

*Id.* at p. 4.[1]

In preliminarily approving the settlement, the Court found that the settlement class met all the requirements of Rule 23(a) and (b). *Id.* at pp. 5-11. The Court then analyzed seven factors and found the Settlement to be "fair, reasonable and adequate" under Rule 23(e). *Id.* at pp. 11-14. Finally, the Court approved the notice plan proposed by the parties and directed the Administrator to issue notice and setup a settlement website. *Id.* at pp. 11, 15-21.

---

[1] The class data produced by FiveStrata identified 21,953 class members. Doc. 52-1, Bridley Declaration, ¶ 5. The Administrator analyzed the data and determined that 1,185 of these persons were duplicated in the data as these persons had the same name, address and phone number appearing more than one time in the data. *Id.* Thus, there are a total of 20,768 unique class members to whom notice was directed. *Id.*

### D. Class Notice and Claims Administration

The Administrator sent CAFA notice and notice to the class members on January 26, 2024. Doc. 52-1, Bridley Declaration, ¶¶ 4-10, Exhibits A and B; Ex. 1, Bridley Declaration ¶¶ 4-5. The notices were also sent to the class members via e-mail to 20,642 of the class members for whom FiveStrata had obtained e-mail addresses. Doc. 52-1, Bridley Declaration, ¶ 10; Ex. 1, Bridley Declaration, ¶ 5. The settlement website, www.FAFSSettlement.com, was also available for class members to review contemporaneously with the notices being sent. Doc. 52-1, Bridley Declaration, ¶¶ 11-13; Ex. 1, Bridley Declaration ¶¶ 9-11. The notice to class members included the notice and claim form approved by the Court. *See* Doc. 52-1, Bridley Declaration, ¶¶ 4-15, and Exhibit B. In total, 98.1% of the class members received notice via either mail and/or e-mail. Ex. 1, Bridley Declaration, ¶ 6.

The notice also identified the settlement website from which class members could obtain more information and a QR Code that would take class members directly to the settlement website. *See* Doc. 52-1, Bridley Declaration, ¶¶ 11-12, Exhibit B; Ex. 1, Bridley Declaration, ¶ 9-10. The settlement website also includes a digital copy of the notice and claim form and provided class members, if they so wished, an option to electronically opt out of the settlement. *See id*. In addition, the settlement website includes a copy of the operative complaint, answers to frequently asked questions, settlement documents (including the agreement, the motion for

7

preliminary approval and the preliminary approval order). *See id.* The website also identified critical dates in the case, including the deadline to submit claims, opt-out of the settlement, object to the settlement, and the date of the Final Approval Hearing. *See id.* The settlement website, in addition to the notice, also included the e-mail and phone number for the Administrator so that class members could submit questions and inquiries.

As Class Counsel set forth in Plaintiff's Motion for Preliminary Approval and at hearing on the motion, the notice plan was robust. The results showed.

The notice reached 98.1% of class members. Ex. 1, Bridley Declaration, ¶ 6. Most class members received notice in multiple forms – mail and e-mail. *See id.* at ¶¶ 4-5. In addition, the Administrator ran searches to locate new mailing addresses for class members whose mailed notice was returned as undeliverable. *See id.*

Despite the over 20,000 class members receiving notice, no class member objected to the settlement and a mere two-tenths of one percent of class members (51 class members) have excluded themselves from the settlement. *See id.* at ¶¶ 4-5, 7.

E.  **Payment to Claimants**

There have been 3,295 valid claims submitted by class members. *Id.* at ¶¶ 12, 14. This represents a claim rate of 15.87% (3,295 claims divided by 20,768 unique class members), which is within the rate previously predicted by Class Counsel

given the thorough notice plan. *See* Doc. 43-2, ¶ 26. Each class member will therefore receive $129.33, assuming the Court awards the amounts sought by Class Counsel ($5,000 for Ms. Kimble, $195,000 for attorneys' fees and $18,000 for litigation expenses) and the cost of settlement administration of $55,842.[2]

## V. ARGUMENT

### A. This Court Should Grant Final Approval of the Settlement.[3]

Rule 23 requires "that class-action claims may be settled, voluntarily dismissed, or compromised only with the court's approval." *Nolan v. Detroit Edison Co.*, 2022 WL 16743866, at *2 (E.D. Mich. Nov. 7, 2022) (Lawson, J.) (quoting *Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016)). Courts therefore consider the Rule 23(e) factors when determining whether to grant final approval of a settlement. *See id.*; *see* FED. R. CIV. P. 23(e)(1)-(2).

---

[2] Class Counsel will soon be filing a motion for approval of their fees, reasonable litigation expenses and a representative service award for Ms. Kimble. It is possible the payment to class members will be slightly larger as Class Counsel will likely have less than $18,000 in expenses.

[3] For purposes of brevity, Plaintiff incorporates her analysis of the Rule 23 (a) and (b) requirements as set forth in her Motion for Preliminary Approval and as determined by the Court in its Preliminary Approval Order. Doc. 43, *passim*; Doc. 50, pp. 5-11. There have been no factual changes or issues that have arisen in the case leading to a change in the analysis of any of these factors. Thus, as the elements of Rule 23(a) and (b) were satisfied at the preliminary approval stage, they remain satisfied at the final approval stage. Plaintiff does not repeat that analysis here.

Under Rule 23(e)(2), a court may only approve a settlement based on a finding that the proposed settlement is "fair, reasonable and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>    (i) the costs, risks, and delay of trial and appeal;
>    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
>    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>    (iv) any agreement required to be identified under Rule 23(e)(3); and,
>
> (D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2). The factors the Court considers when evaluating Rule 23(e) are, "1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Nolan*, 2022 WL 16743866, at *2 (quoting *Int'l Union, UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). These factors are considered at the final approval stage. *See id.; see also Pratt v. KSE Sportsman Media, Inc.*, 2024 WL 113755, at *2-3 (E.D. Mich. Jan. 10, 2024).

The Court has already determined that six of these seven factors have been satisfied. Doc. 50, pp. 11-15. The only factor not yet addressed by the Court at the preliminary approval stage was "the reaction of absent class members." *See id.* Again, for purposes of brevity, Plaintiff incorporates her arguments regarding Rule 23(e) and these factors that were raised in her Motion for Preliminary Approval and the Court's analysis of these factors into this brief. Doc. 43, *passim*; Doc. 50, pp. 11-15. As no facts have changed regarding six of the factors previously analyzed and addressed by the Court, Plaintiff focuses on the remaining "the reaction of absent class members" factor. Plaintiff further discusses the strength of the relief afforded to the claimants and the sufficiency of the class notice.

       **1.    The Reaction of Absent Class Members Warrants Approval of the Settlement.**

The lack of objection to a class settlement indicates that absent class members approve of the settlement. *See generally Pratt v. KSE Sportsman Media, Inc.*, 2024 WL 113755, at *2-3 (E.D. Mich. Jan. 10, 2024). The *Pratt* court found this factor satisfied where no class members objected to the settlement in a class consisting of over 14,000 persons where notice reached over 99% of the class members. *Id.* at *1, 3.

The same holds true here. The class members appear to have reacted favorably to the class. Despite over 98% of the 20,000-plus class members receiving notice (most of whom receive notices in two forms – mail and e-mail), **zero** class members

have objected to the settlement. Ex. 1, Bridley Declaration, ¶¶ 4-8. Indeed, a lack of objection "indicates that the Settlement is fair, reasonable and adequate." *Strano v. Kiplinger Washington Editors, Inc.*, 2023 WL 6628013, at * 2 (E.D. Mich. Oct. 11, 2023) (internal quotation and citation omitted).

The minimal number of class members who opted out of the settlement also establishes this factor. "A certain number of opt-outs and objections are expected in a class action." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (internal citation omitted). As such, this factor is readily satisfied where "less than 1%" of class members opt out of a settlement. *See id.* Here, only two-tenths of one percent of class members (51 out of 20,768 unique class members) have opted out of the settlement. *See* Ex. 1, Bridley Declaration, ¶¶ 4-5, 7. This small amount of exclusion requests further establishes the absent class members approval of the settlement.

Notably, this positive reaction is not surprising because the Agreement affords significant relief to the class.

> **2.   The Agreement Affords Significant Relief to the Settlement Class.**

The Agreement provides significant relief to members of the Settlement Class, especially compared to other TCPA cases. Settlement Class members who submit a valid claim form will receive approximately $129.33. *See supra* at p. 9. This amount is significantly greater than other approved TCPA class settlements. *See e.g.*

*Bowman v. Art Van Furniture, Inc.*, 2018 WL 6444514, at *2, 5 (E.D. Mich. Dec. 10, 2018) (approximately $99 per claimant); *Boger v. Citrix Sys., Inc.*, 2023 WL 3763974, at *11 (D. Md. June 1, 2023) ("the expected settlement payment for each Class Member is $44.14, which exceeds the typical value of claims in similar settlements and the likely statutory damages for TCPA claims"); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (recovery of $34.60 per claimant "falls within the range of recoveries in other TCPA actions"); *Markos v. Wells Fargo Bank, N.A.*, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (recovery of $24 per claimant "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter"); *Vasco v. Power Home Remodeling Group LLC*, 2016 WL 5930876, at *8 (E.D. Pa. Oct. 12, 2016) (approximately $27.00 per claimant). In short, the significant relief afforded here continues to warrant final approval of the settlement.

### 3. Notice to the Class was Thorough and Satisfied Due Process.

At final approval, the Court must also determine whether the notice to the class members satisfies due process. *See generally In re Flint Water Cases*, 571 F. Supp. 3d 746, 785 (E.D. Mich. 2021). Due process is satisfied where the notice reasonably apprises the absent class members of their rights and affords them an opportunity "to present their objections." *Id.* The notice must therefore "fairly apprise the prospective members of the class of the terms of the proposed settlement

so that class members may come to their own conclusions about whether the settlement serves their interests." Doc. 50, p. 15 (quoting *Int'l Union, UAW*, 497, F.3d at 629)).

The Court found at preliminary approval that the "plan for notifying absent class members proposed by the parties is reasonable." Doc. 50, p. 16. The results of the notice plan further establish the Court's determination remains true for at least three additional reasons.

First, the class notice was received by most class members in two forms – mail and e-mail. *See* Ex. 1, Bridley Declaration, ¶¶ 4-5. Ultimately, the class reached 98.1% of the Class Members either by mail or e-mail. *Id.* at ¶ 6. A notice like the one here satisfies due process where it reaches such a high percentage of class members. *See generally In re Flint Water Cases*, 571 F. Supp. 3d at 786 (notice reached over 95% of class members).

Second, the thorough nature of the class notice is reflected in the significant claims rate of nearly 16%. Ex. 1, Bridley Declaration, at ¶¶ 4-16, 12-14. This is significantly higher than most TCPA settlements. *See Bowman v. Art Van Furniture, Inc.*, 2018 WL 6445389, at *6 (E.D. Mich. Dec. 10, 2018) (2.9% claim rate); *Rogers v. Lumina Solar, Inc.*, 2020 WL 3402360, at *10 (D.D.C. June 19, 2020) (1.25% claim rate); *Lee v. Glob. Tel\*Link Corp.*, 2018 WL 4625677, at *7 (C.D. Cal. Sep. 24, 2018) (1.8% claim rate); *Vasco v. Power Home Remodeling Grp. LLC*, 2016 WL

5930876, at *2 (E.D. Pa. Oct. 12, 2016) (9% claim rate); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) (7.7% claim rate).

Third, and related to the high claim rate is the fact that the process for class members to submit claims was not burdensome. Rule 23(e)(2)(C)(ii) considers "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." FED. R. CIV. P. 23(e)(2)(C)(ii). This factor is particularly concerned with "methods of processing claims so complex that they discourage class members from pursuing valid claims." *T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *14 (N.D. Ill. Mar. 25, 2022). Here, the claims process was straight-forward. A class member simply needs to sign their name, and confirm their name, address and phone number on which they received the calls. *See* Doc. 43, p. 20; Doc. 52-1, Bridley Declaration, ¶¶ 11-12, 14; Ex. 1, Bridley Declaration, ¶¶ 9-14. Moreover, the claim form was able to be submitted via mail or through electronic means. *See* Ex. 1, Bridley Declaration, ¶ 12. A request that a claimant submit a claim form that requires "claimants provide their names, addresses, and signature" does not raise concerns with the claims process. *T.K. Through Leshore*, 2022 WL 888943, at *14 (internal quotation and citation omitted).

## VI. CONCLUSION

As discussed above, in Plaintiff's Motion for Preliminary Approval, and in the Court's Preliminary Approval Order, the elements of Rule 23(a), (b) and (e)

remain satisfied at this stage of final approval. The settlement continues to be "adequate, reasonable, and fair to the class" (Doc. 50, p. 12) and should be finally approved as such.

For the foregoing reasons, Plaintiff respectfully requests the Court: (1) grant final approval and find that the requirements of Rule 23 remain satisfied for settlement purposes; (2) enter final judgment in favor of Plaintiff and the settlement class consistent with the terms of the Agreement; and (3) order the Administrator to distribute the settlement fund in accordance with the terms of the Settlement.

/s/ *Christopher E. Roberts*
Christopher E. Roberts (#61895MO)
Butsch Roberts & Associates LLC
7777 Bonhomme Avenue, Suite 1300
Clayton, Missouri 63105
Phone: (314) 863-5700
Fax: (314) 863-5711
E-mail: croberts@butschroberts.com

/s/ *Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq.
Michigan Bar ID: P84351
Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, Pennsylvania 19002
Phone: (267) 468-5374
Facsimile: (877) 788-2864
Email: jginsburg@creditlaw.com
teamkimmel@creditlaw.com

Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2024, a copy of the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon all counsel of record.

/s/ *Christopher E. Roberts*