UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARCIA KIMBLE,

      Plaintiff,      Case Number 23-10037
                 Honorable David M. Lawson
v.

FIRST AMERICAN HOME WARRANTY CORP.
and FIVESTRATA LLC,

      Defendants.
_____/

**<u>OPINION AND ORDER GRANTING MOTION FOR FINAL CERTIFICATION OF SETTLEMENT CLASS AND TO APPROVE CLASS ACTION SETTLEMENT AGREEMENT, AND GRANTING CLASS COUNSELS' MOTION FOR ATTORNEY'S FEES, EXPENSES, AND SERVICE AWARD</u>**

The Court conducted a fairness hearing on June 20, 2024 to determine whether a settlement agreement should be given final approval on behalf of the conditionally certified settlement class in this case. The Federal Rules of Civil Procedure require court approval of settlements in class actions, Fed. R. Civ. P. 23(e)(2), and if the settlement would determine the rights of and bind absent class members, "the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate." *Ibid*. The June 20 hearing was the second step in the settlement approval process. *See* Manual for Complex Litigation § 21.632-.633 (4th ed.); *see also Tennessee Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565 (6th Cir. 2001). On January 19, 2024, the Court granted preliminary approval of the settlement agreement under Federal Rule of Civil Procedure 23(e) as the first step in the process. The Court directed that written notice to the class be given by January 26, 2024 via first-class mail augmented by other media, including email. Plaintiff's counsel retained Atticus Administration, LLC as the agent to give notice to the class in the manner approved by the Court, and ultimately to administer the settlement, process claims, and

make distributions. Notice to the absent class members was given in the manner ordered by the Court. The notice summarized the proposed settlement, the manner of distribution, the attorney's fees to be requested by class counsel, and the banner (service) award to be requested by the named plaintiff. No objections have been received by the Court or the parties. The Court is satisfied that the settlement is fair, adequate, and reasonable; the attorney's fee, cost reimbursement, and banner award requests are reasonable; and the settlement is in the best interest of the class as a whole. The motion to for final approval of the class settlement will be granted.

The amount sought by class counsel for attorney's fees appears in line with awards granted by other courts in TCPA cases on a percentage-of-fund basis, and class counsel has supplemented adequately the information for the Court to complete a lodestar cross-check. The motion for attorney's fees likewise will be granted.

## I. The Plaintiff Class

The named plaintiff, Marcia Kimble, filed a complaint alleging that the defendants violated the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, by contacting her with unsolicited phone calls despite her number being listed on the federal Do-Not-Call registry authorized under that statute. Through discovery, the parties identified nearly 22,000 potential class members who received the offending calls after registering their phone numbers. During settlement negotiations with the help of a mediator, they reached a proposed settlement of the class claims.

The Court previously conditionally certified the following class in an order granting the plaintiff's motion for preliminary approval of the proposed settlement agreement:

> The 21,953 persons identified by the records of FiveStrata whose telephone numbers were registered in the National Do-Not-Call Registry and who were called by FiveStrata on behalf of First American.

*Kimble v. First Am. Home Warranty Corp.*, No. 23-10037, 2024 WL 220369, at *2 (E.D. Mich. Jan. 19, 2024).

## II. The Proposed Settlement

Under the proposed settlement, the defendants agree to pay $700,000 to a non-reversionary, common fund for payment of claims, attorney's fees, and expenses. The agreement calls for payments from the fund to be allocated in the following priorities: first, to pay out awards of attorney's fees and costs as approved by the Court but no more than $195,000; second, payment of litigation expenses in an amount no more than $18,000; third, to cover the costs of administration, which amount to a $55,842 payment to Atticus Administration, LLC; fourth, a $5,000 incentive award payment to named plaintiff Marcia Kimble; and finally, to pay an equal amount to each class member under the proposed plan of allocation. Under that plan, class members making timely claims would receive a distribution of the net balance of the settlement fund in equal shares, which the parties estimated to be approximately $90 to $110 each based on an estimated 15 to 20% claims rate. *See* ECF No. 50, PageID.472-73. At the fairness hearing, class counsel estimated that the distribution actually would be closer to $130 based on the number of claims received.

## III. The Class Notice

The parties certified that class counsel engaged Atticus Administration to provide notice to class members. Atticus represents that it sent notice via first class mail to 20,762 class members within the time required by the preliminary approval order. This figure is less than the 21,953 individuals identified as class members in that order. Atticus explains that a review of the class data identified 1,185 duplicate entries based on the same name, address, and phone number appearing more than once. Supp. Decl. of Bryn Bridley, ECF No. 53-1, PageID.529. Additionally,

six class member records did not include a valid mailing address. *Ibid.* Of the mailings, 3,311 notices were returned as undeliverable; 144 of these returned notices included forwarding information and were mailed again. *Ibid.* The other 3,112 undeliverable notices were sent to a professional address tracing service, which located new addresses for 1,633 class members. *Ibid.* Atticus remailed notice packets to those individuals. *Ibid.* Fifty-nine notices returned undeliverable after the first mailing were not submitted for address tracing because they were received after the response deadline. *Ibid.* Another 160 notices were returned undeliverable after the second mailing. *Ibid.* In total, 19,068 notices were mailed successfully. *Ibid.*

Atticus also provided notice via email. It sent information about the settlement to 20,642 class members with valid email addresses. *Ibid.* The six class members who did not have a valid mailing address all were sent notices by email. *Ibid.* Atticus represents that of the emails it sent, 18,147 were delivered successfully, 2,495 bounced back, 6,552 of the emails were opened, and 807 recipients clicked into the settlement website. In total, 20,373 class members — 98.1% of the class — received notice either by mail or email or both. The settlement administrator also established a website for the settlement, which has received 10,424 visits to date, and a toll-free hotline, which received 562 calls. *Id.* at PageID.530. By April 30, 2024, the administrator had received 3,295 valid claim forms, representing a claim rate of 15.9% of the settlement class. *Id.* at PageID.531. The administrator also received 235 claims from individuals not included in the class member data. These individuals were mailed "Cure Letters," which sought documentation of an individual's status as a class member. *Ibid.* The administrator represents that it received one valid cure response. *Ibid.*

Fifty-one class members filed valid opt-out requests. *Id.* at PageID.530. Atticus received four additional opt-out requests but determined that the information submitted by these individuals

was inadequate because the supporting documentation uploaded to the settlement website consisted of photos unrelated to the settlement. *Ibid.* Under the schedule set by the Court, the deadline for filing objections was April 30, 2024. ECF No. 50, PageID.487. No class member has objected to the settlement. Supp. Decl. of Bryn Bridley, ECF No. 53-1, PageID.531.

### IV. Final Class Certification

In its January 19, 2024 order, the Court conditionally certified the settlement class. Based on the presentation of the parties, the Court can now grant final class certification.

"The district court must conduct 'a rigorous analysis'[] as to all the requirements of Rule 23." *Clemons v. Norton Healthcare Inc. Ret. Plan*, 890 F.3d 254, 278-79 (6th Cir. 2018) (quoting *Pipefitters Loc. 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 630 (6th Cir. 2011)). That "rigorous analysis" was performed when the Court conditionally certified the settlement class. The evidence presented by the plaintiff in her motion for final settlement approval fortifies the Court's previous findings.

As noted in the order preliminarily approving the settlement class, "[a]ny class certification must satisfy Rule 23(a)'s requirement of numerosity, commonality, typicality, and adequate representation." *Clemons*, 890 F.3d at 278. "Further, a class action must fit under at least one of the categories identified in Rule 23(b)." *Ibid.*

*First*, the proposed class comprising 20,768 individuals (down from the original 21,953 due to the discovery of duplicate entries) who were registered on the National Do-Not-Call Registry and who received unsolicited phone calls from the defendants satisfies the numerosity requirement. The number of absent class members is so numerous that joinder of all those persons as individual plaintiffs would be impracticable. Although the numerosity requirement "'requires examination of the specific facts of each case and imposes no absolute limitations[,]' . . . [w]hen

class size reaches substantial proportions . . . the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996) (quoting *Gen. Tel. Co. v. EEOC*, 446 U.S. 318, 330 (1980)). The plaintiff has established "that there are *in fact* sufficiently numerous parties" to make joinder impractical in this case. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original); *see also Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 542 (6th Cir. 2012) (noting that a class of 69 members would be sufficient to meet the numerosity requirement).

*Second*, there are prominent common questions of law and fact affecting all of the class members that are pertinent to the defendants' liability. As the Court discussed in its previous opinion, the core question in this case is whether the defendants' telephone solicitations were unlawful under the TCPA. The plaintiff identified several related common questions, including whether:

> (1) FiveStrata's calls were part of a campaign of "telephone solicitations" as defined by 47 U.S.C. § 227(a)(4); (2) the contract between FiveStrata and First American was sufficient to create an agency relationship for purposes of vicarious liability; (3) FiveStrata was acting with actual authority of First American; (4) First American ratified FiveStrata's conduct; (5) FiveStrata had policies and procedures in place to warrant application of the "safe harbor"; (6) First American had policies and procedures in place to warrant the application of the safe harbor; and, (7) the calls at issue violate Section 227(c) of the TCPA and the TCPA's corresponding regulations.

ECF No. 43, PageID.344-45. These issues are "capable of classwide resolution" because deciding them will determine the "validity of each one of the claims in one stroke." *Young*, 693 F.3d at 542 (quoting *Dukes*, 564 U.S. at 350). The class plaintiffs all were registered on the national Do-No-Call Registry, and all would have received unwanted telephone calls from the defendants. The legality of these calls is the fundamental issue in this case. Moreover, courts frequently find that TCPA actions raise common issues for class consideration. *See, e.g.*, *Bowman v. Art Van Furniture, Inc.*, No. 17-11630, 2018 WL 6445389, at *2 (E.D. Mich. Dec. 10, 2018); *Compressor*

*Eng'g Corp. v. Thomas*, 319 F.R.D. 511, 525-26 (E.D. Mich. 2016); *Avio Inc. v. Alfoccino, Inc.*, 311 F.R.D. 434, 444 (E.D. Mich. 2015); *Michael v. WM Healthcare Sols.*, No. 10-638, 2014 WL 497031, at *6 (S.D. Ohio Feb. 7, 2014); *Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 444 (N.D. Ohio 2012); *cf. Jewell v. Magnolia Bank, Inc.*, No. 23-78, 2024 WL 203972, at *6 (W.D. Ky. Jan. 18, 2024) (refusing to strike class allegations at pleading stage because of the prevalence of common issues; *Sowders v. Scratch Fin., Inc.*, No. 23-56, 2023 WL 7525900, at *8 (S.D. Ohio Nov. 14, 2023) (same). Although the parties suggest that the case may feature some individualized questions, such as whether a particular plaintiff consented to the communications, *see* Decl. of Christopher Roberts, ECF No. 43-2, PageID.409-10, the fact that an issue may apply to various class members differently does not defeat commonality, especially when it is a speculative defense. *Bridging Communities, Inc. v. Top Flite Fin., Inc.*, 843 F.3d 1119, 1125-26 (6th Cir. 2016).

*Third*, because the plaintiff's claims principally would focus on the propriety of the defendants' actions and application of their policies, they are sufficiently typical of all class members to be addressed in common. Plaintiff Marcia Kimble's experience receiving the unsolicited phone calls from the defendants after she registered her phone number on the Do-Not-Call Registry appears representative of the other putative plaintiffs' experiences. *See Compressor Eng'g*, 319 F.R.D. at 526 (finding a plaintiff's claims typical where each potential class member was alleged to have received the same fax and each claim was premised on the same legal theory under the TCPA).

The parties also adequately have established that class certification is appropriate under Rule 23(b)(3). The named individual plaintiff and class representative adequately is positioned to represent the class, and her interests are aligned sufficiently with theirs because her interests are

identical to those of the other class members who also are seeking to enforce their rights under the TCPA. No conflicts of interest are apparent, and the plaintiff does not seek any preferential treatment other than her reasonable service award. *Cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997) (distinguishing cases where named plaintiffs' interests conflict with those of other class members); *In re Dry Max Pampers Litig.*, 724 F.3d at 722 (finding named plaintiffs inadequate where they had incentives to compromise the interest of the class for personal gain). Moreover, Kimble has been engaged actively in this litigation and during the mediation process. Her counsel represents that her meticulous record-keeping was critical to the settlement. Decl. of Jacob U. Ginsburg, ECF No. 43-3, PageID.421-22.

Furthermore, she is represented by qualified attorneys with ample experience litigating class-action and TCPA suits, particularly in Missouri. *See* ECF No. 43-2, PageID.403, ECF No. 43-3, PageID.420-21. Courts have found plaintiff's counsel to be experienced and capable. *See, e.g.*, Preliminary Approval Order, *Ruby v. Build-A-Bear, Inc.*, Case No. 4:21-cv-01152-JAR (E.D. Mo. March 28, 2023) (appointing Christopher Roberts class counsel). The record demonstrates that the plaintiff's attorneys are committed to prosecuting the class members' claims until there is a final, non-appealable resolution of the dispute in the present case.

## V.  Approval of the Settlement Agreement

The plaintiff has established that the proposed settlement is adequate, reasonable, and fair to the class. Assuming the Court awards all of the fees and expenses requested by class counsel, it appears that absent class members will receive approximately 61% of the settlement fund proceeds. Each member will receive an individual payment of $129.33. Class counsel represents that that figure could be slightly larger, as this calculation assumed that all of the authorized $18,000 in litigation expenses would be needed. The plaintiff's motion for attorney's fees

ultimately seeks $17,044.05 in litigation expenses. Using this figure results in an estimated individual payment of $129.62 — a 29 cent per person increase.

In either case, this payout is higher than the estimated $90-110 payment assumed in the Court's preliminary conditional certification decision, and as the Court emphasized, it is not trivial in light of the absence evidence of actual damages and statutory damages of "up to $500" for each violation of the statute. 47 U.S.C. § 227(c)(5)(B); *Kimble*, 2024 WL 220369, at *7.

The proposed settlement also satisfies all seven factors the Court must consider in determining the fairness, reasonableness, and adequacy of the agreement. *See Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1093 (6th Cir. 2016). The Court considered these factors in detail in its order approving conditional certification, and there is no indication that the circumstances have changed since then. For convenience, those findings are repeated here:

> First, the risk of fraud and collusion is low. The parties have engaged in contested litigation: both defendants have pending motions to dismiss and have contested the discovery timeline. This discovery dispute was only resolved when the Court explained that it was unlikely to grant the defendants' request to bifurcate discovery and directed them to attempt mediation of the case with a private mediator. According to counsel, that mediation lasted a full day and required several follow-up consultations with the mediator to finalize the terms of a settlement.
>
> Second, as for the complexity, expense, and duration of the litigation, at first blush, the issues here do not appear especially complex, and the complaint only contains one count. However, the plaintiff points out that TCPA claims often require protracted litigation. She argues that her case raises several complicated issues, such as the vicarious liability of First American and the potential for the defendants to raise individual consent defenses, which would require "mini-trials." *See Gordon v. Caribbean Cruise Line, Inc.*, No. 14 C 5848, 2019 WL 498937, at *10 (N.D. Ill. Feb. 8, 2019). Moreover, the early discovery dispute portends further battles. If the settlement agreement is not approved, protracted litigation is likely.
>
> Third, the parties have engaged in significant formal discovery throughout the pendency of this litigation to explore the basis of the plaintiff's claims. The plaintiff and First American commenced discovery early in the case, which ultimately led to an amended pleading adding FiveStrata as a co-defendant. *See* Mot. to Approve Settlement, ECF No. 43, PageID.355. After the July status conference, the parties exchanged information relevant to ascertaining the scope of the class and evaluating the plaintiff's claims. At this stage of the proceedings, the record was sufficient for

the parties to identify the strength of the claims and defenses and to guide the parties' settlement negotiations.

Fourth, the plaintiff's prospects for success on the merits are uncertain. To start, First American may not be liable if it can show that FiveStrata was an independent contractor rather than an agent. *See Keating v. Peterson's NelNet*, 615 F. App'x 365, 371-72 (6th Cir. 2015) (explaining that liability under the TCPA does not extend to independent contractors). Next, the plaintiffs acknowledge that some courts have held that the TCPA's do-not-call protections do not apply to calls received on cell phones. *See, e.g.*, *Cunningham v. Politi*, No. 18-00362, 2019 WL 2519702, at *4 (E.D. Tex. Apr. 26, 2019). Other courts require a showing that an individual's cell phone number is used for residential purposes. *See Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1201 (M.D. Tenn. 2017). This issue could require further individualized assessment. Finally, the defendants have argued that at least some putative plaintiffs consented to receiving calls, although the plaintiff disputes that there is evidence of that. Decl. of Christopher Roberts, ECF No. 43-2, PageID.409-10. Considering these issues, the certainty that many of the class members will receive a recovery in the settlement outweighs the risks and costs posed by continued litigation.

Fifth, class counsel and the named plaintiff actively participated in the litigation and mediation and express their strong endorsements of the settlement.

Sixth, the views of absent class members are not yet known, but the notice period will provide ample opportunity for them to weigh in or object to the proposed settlement.

Finally, the public interest favors resolution of the matter by way of a settlement that will secure a substantial recovery for the class members while avoiding wasting considerable time and expense by the parties and the Court, possibly only to reach the same end. *See UAW*, 497 F.3d at 632 (noting that federal policy favors settlement of class actions); *Whitlock*, 843 F.3d at 1094 (noting that settlement agreements promote finality). Approval of the settlement agreement, which will ensure some measure of compensation for many potential plaintiffs, also is consistent with the strong remedy in the form of statutory damages provided by Congress in the TCPA. *See* 47 U.S.C. § 227(c)(5).

*Kimble*, 2024 WL 220369, at *7-8.

The final settlement agreement is approved.

## VI. Attorney's Fees and Expenses

Class counsel have filed a motion asking the Court to authorize payments of $195,000 in attorney's fees and $17,044.05 in litigation expenses. Counsel represent that the fee award was

calculated as 27.85% of the settlement common fund, according to the terms of the settlement agreement. The expenses include the costs of the mediator, travel expenses, court filing and services fees, and printing charges.

"When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved." *Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016) (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)). "These two measures of the fairness of an attorney's award — work done and results achieved — can be in tension with each other." *Ibid.* "The lodestar method of calculating fees better accounts for the amount of work done, whereas the percentage of the fund method more accurately reflects the results achieved." *Ibid.* (citations and quotations omitted in this and following citations except as otherwise noted). "To determine the lodestar figure, the court multiplies the number of hours 'reasonably expended' on the litigation by a reasonable hourly rate." *Ibid.* "The court may then, within limits, adjust the lodestar to reflect relevant considerations peculiar to the subject litigation." *Ibid.* "In contrast, to employ the percentage of the fund method, the court determines a percentage of the settlement to award to class counsel." *Ibid.*

"As the two methods measure the fairness of the fee with respect to different desired outcomes, 'it is necessary that district courts be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them.'" *Ibid.* (quoting *Rawlings*, 9 F.3d at 516). The Court also may elect to "employ[] the lodestar method to determine the fairness of the fee, then . . . cross-check it with the percentage-of-the-fund calculation." *Id.* at 280. However, regardless of the method chosen, the Court's decision must include "'a clear statement of the

reasoning used in adopting a particular methodology and the factors considered in arriving at the fee' in order to allow effective appellate review for abuse of discretion." *Id.* at 279. "District courts have the discretion to select the particular method of calculation, but must articulate the 'reasons for adopting a particular methodology and the factors considered in arriving at the fee.'" *Id.* at 280 (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)).

"*Moulton* set out the germane factors," which include, "'(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.'" *Ibid.* (quoting 581 F.3d at 352).

The percentage-of-the-fund method is appropriate for evaluating the reasonableness of the attorney's fees in this case. The result achieved for the class in terms of the cash payments to be made from the fund was substantial considering the absence of proven actual damages, and class counsel undertook the representation on a contingent fee basis and advanced significant labor and expenses to litigate the case. The percentage award requested also is appropriate to compensate class counsel adequately for the risk inherent in contingent fee representation. *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 747 (9th Cir. 2018) ("Under the percentage-of-recovery method, the requested fee was equal to 25% of the settlement fund . . . [which] . . . was commensurate with the risk posed by the action and the time and skill required to secure a successful result for the class, given that class counsel faced three motions to dismiss and participated in extensive settlement negotiations."); *see also Rawlings*, 9 F.3d at 515 (opining the "trend towards adoption of a percentage of the fund method in [common fund] cases.").

"When conducting a percentage of the fund analysis, courts must calculate the ratio between attorney's fees and benefit to the class." *Gascho*, 822 F.3d at 282. "Attorney's fees are the numerator and the denominator is the dollar amount of the Total Benefit to the class (which includes the 'benefit to class members,' the attorney's fees and may include costs of administration)." *Ibid*. That calculation method departs from traditional norms in non-class-action contingent fee cases, where the fee is determined by a percentage of the net recovery. *See Hunt v. Hadden*, No. 14-10713, 2015 WL 3473680, at *8 (E.D. Mich. June 2, 2015), *order vacated in part on reconsideration*, No. 14-10713, 2015 WL 13048812 (E.D. Mich. July 17, 2015). But in class cases, considerable amounts of litigation expenses must be advanced by class counsel on behalf of absent potential plaintiffs too numerous to consult, which generally justifies treating these costs as a benefit to the class. In the past, this Court has held that settlement administration expenses should be netted out of the denominator due to the possibility that class counsel would lack an incentive to monitor those expenses if "attorney's fees are calculated on the basis of a fund total that is unaffected by the settlement administrative charges." *Beattie v. CenturyTel, Inc.*, No. 02-10277, 2010 WL 11545032, at *4 (E.D. Mich. July 9, 2010); *see also Nolan v. Detroit Edison Co.*, No. 18-13359, 2022 WL 16743866, at *7 (E.D. Mich. Nov. 2, 2022) (approving, without significant explanation, attorney's fees of one-third of net settlement amount). However, the Court has declined to do so in all cases, particularly where the notification task faced by the administrator was daunting or the administrator "achieved remarkable results . . . ." *See Martin v. Trott Law, P.C.*, No. 15-12838, 2018 WL 4679626, at *8 (E.D. Mich. Sept. 28, 2018); *see also Friske v. Bonnier Corp.*, No. 16-12799, 2019 WL 5265324, at *2 (E.D. Mich. Oct. 17, 2019) (including administration expenses as part of the total benefit denominator). In this case, there is no reverter authorized by the settlement agreement; all of the net common fund will be distributed to the

claimants on an equal-share basis. The benefit to class members includes the anticipated $427,113.95 in payments on class member claims, the $5,000 banner award to the named plaintiff, $195,000 in attorney's fees, $17,044.05 in litigation expenses, and $55,842 in administrative costs, which comes to a total of $700,000. Including the costs of the administrator among the benefit in this case is appropriate because of the 98% notice rate achieved and the fact that most of class members received communications via both mail and email. This success doubtless is partially attributable to the quality of the data obtained from the defendants, but achieving this level of notice, which included address research and re-mailings, required significant effort. The administrator's costs do not appear excessive. As expected, the requested attorney's fee thus represents 27.85% of the denominator, which is generally within the range of percentage fees that have been approved in other recent TCPA class actions in this Circuit. *E.g.*, *Lyngaas v. Curaden AG*, No. 17-10910, 2022 WL 3931455, at *6-7 (E.D. Mich. Aug. 31, 2022) (approving award of 25% of fund after subtracting litigation expenses and class representative award); *Whiteamire Clinic, P.A. Inc. v. Cartridge World N. Am., LLC.*, No. 16-226, 2021 WL 9124592, at *2 (N.D. Ohio Sept. 14, 2021) (approving one-third of award as attorney's fees); *Johansen v. One Planet Ops, Inc.*, No. 16-00121, 2020 WL 7062806, at *4 (S.D. Ohio Mar. 25, 2020) ("Fees representing one-third of the total settlement amount have been found to be reasonable."); *Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*, No. 15-2223, 2018 WL 4539287, at *5 (N.D. Ohio Sept. 21, 2018) ("Moreover, the Court finds that counsel's request for one-third of the fund is an amount frequently awarded by district courts in the Sixth Circuit."); *but see Michel v. WM Healthcare Sols., Inc.*, No. 1:10-CV-638, 2014 WL 497031, at *17, *23 (S.D. Ohio Feb. 7, 2014) (awarding 15% of fund instead of requested award of one-third of fund, which still was approximately double

the lodestar of the work performed on the case); *Bowman v. Art Van Furniture, Inc.*, No. 17-11630, 2018 WL 6444514, at *1-3 (E.D. Mich. Dec. 10, 2018) (similar).

The lodestar cross-check also supports the overall reasonableness of a fee award. *See In Re Flint Water Cases*, 63 F.4th 486, 495, 499 (6th Cir. 2023); *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 628 (6th Cir. 2020). At the Court's request, class counsel has supplemented their presentation with detailed billing records that substantiate their work. Class counsel show that they have so far expended approximately 316.3 hours prosecuting the claims advanced in this litigation, divided on an approximately 2:1 basis between attorneys Jacob Ginsburg and Christopher Roberts. Decl. of Christopher Roberts ¶¶ 11-12, ECF No. 55-1, PageID.563; ECF No. 57; ECF No. 58. They state that their total fees incurred thus far are $156,000 based on attorney Roberts's $525 hourly rate and attorney Ginsburg's $475 hourly rate. *Ibid.* Combined, the attorneys' blended hourly rate is $500. Dividing counsel's percentage fee request of $195,000 by the number of hours expended thus far equates to an attorney's fee award of $616.50 per hour.

Certainly, it is to be expected that an hourly rate on a contingent award would exceed the typical hourly rate charged by counsel. *See* 5 Newberg on Class Actions § 15:87 (6th ed.) ("Given the risk of nonpayment that contingent fee lawyers face, it should not be surprising—nor necessarily problematic—if a lodestar cross-check yields a multiplier above 1, that is, a multiplier showing that the lawyers are getting paid more than their hourly billing rates. Indeed, it is arguable that successful class counsel should necessarily get a multiplier above 1 in most cases."). That rate must be commensurate with rates charged by lawyers of comparable skill and experience in the community.

Christopher Roberts was admitted to practice law in 2009 in Missouri and since has been admitted to practice in several other state and federal courts. Roberts Declaration, ¶¶ 4, 5, ECF

No. 43-2, PageID.401-02. He is a partner in his own firm. He has authored book chapters for the American Bar Association on class action law. *Id.* at ¶¶ 6, 7, PageID.402. He has been appointed by courts to serve as class counsel in over a dozen consumer class actions. *Id.* at ¶ 8, PageID.403.

Jacob Ginsburg is a 2011 law school graduate and has been admitted to practice law in Pennsylvania, New Jersey, and Michigan, as well as several federal courts across the country. Ginsburg Declaration, ¶¶ 6-8, ECF No. 43-2, PageID.419-20. He has successfully argued or tried a handful of consumer rights cases, and he is a member of National Association of Consumer Advocates and has made presentations at seminars on consumer law. *Id.* at ¶¶ 12, 13, PageID.420-21.

According to the State Bar of Michigan's 2023 Economics of Law Survey Results Summary Report, their rates are well above the 75th percentile for attorneys specializing in consumer law and similar areas. *See 2023 Economics of Law Survey Results*, State Bar of Michigan, 8-9 (2023), https://www.michbar.org/file/pmrc/pdfs/2_2023EOL_SurveyResults.pdf. The median hourly rate charged by consumer law attorneys in Michigan according to the 2023 Bar Survey is $330. *But see Friske*, 2019 WL 5265324, at *3 (approving blended rate of $574.66 an hour in a Michigan Video Rental Privacy Act case). Multiplying the median rate by the total number of hours expended by counsel yields a total fee of $104,379. A 2009-2013 study of multipliers in class action attorney's fee awards indicates that the mean multiplier for consumer cases was 1.32. Approving the proposed award of $195,000 purely on a lodestar basis would require a multiplier far in excess of that figure.

Even so, with the exception of the value of the services rendered on an hourly basis, most of the *Moulton* factors suggests that a fee award in the range proposed by the plaintiff is appropriate. *See Moulton*, 581 F.3d at 352. The value of the benefit rendered by plaintiff's counsel

is substantial and evidently will result in payments to claimants of approximately $130 each, which is a significant sum when measured against the absence of any actual damages demonstrated. The recovery represents a respectable middle ground within the range of statutory damages of "up to $500" that class members could have hoped to secure through a favorable — but uncertain — verdict. Class counsel was retained on a contingent basis and assumed the risk of advancing substantial costs and expenses throughout this litigation. Society is well-served by the active enforcement of the TCPA, which deters unwanted phone calls, and would do well to reward attorneys who successfully challenge such practices. As noted above, the litigation, though relatively short-lived, involved some unsettled aspects of law and did not guarantee a resolution in the class's favor. The record indicates that counsel advocated ably to vindicate the class interests and have experience litigating these cases.

The attorney's fee request will be approved.

The request for reimbursement of expenses is well documented. The amounts expended are necessary and appropriate. The funds to be paid to the claims administrator likewise are within the range of reason for similar administration of class settlements of this type.

The settlement agreement also contemplated named plaintiff Marcia Kimble receiving an incentive award of $5,000, and class counsel now seek Court approval of that sum. This award is warranted here. Kimble has been engaged actively in this litigation and during the mediation process. Her counsel notes that her meticulous record-keeping, which included screenshots, notes, and recordings, was critical to the settlement. Decl. of Jacob U. Ginsburg, ECF No. 55-2, PageID.570. She also spent considerable time participating in the settlement conference. *Id.* at PageID.571; *see also* Decl. of Marcia Kimble, ECF No. 55-3, PageID.576-77. The requested incentive payment of $5,000 for the named plaintiff is "not in fact a bounty," *see Shane Group,*

*Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 311 (6th Cir. 2016), but instead represents just compensation for the time and effort spent bringing this action to a successful conclusion. This incentive award may be paid as an expense of administration.

VII. Conclusion

The plaintiff has established that the proposed settlement is adequate, reasonable, and fair to the class and that unconditional certification of the settlement class is appropriate. Class counsels' supplemental information establishes that the attorney's fees and expenses are reasonable and appropriate.

Accordingly, it is **ORDERED** the plaintiff's motion for final approval of the class settlement and plan of allocation (ECF No. 53) is **GRANTED**.

It is further **ORDERED** that, pursuant to Federal Rule of Civil Procedure 23(b)(3), the following settlement class is finally certified in this case:

> The 21,953 persons identified by the records of FiveStrata whose telephone numbers were registered in the National Do-Not-Call Registry and who were called by FiveStrata on behalf of First American.

It is further **ORDERED** that the 51 individuals who opted out of the class are deemed excluded from the class and are not bound by, nor may they participate in, the class settlement. A list of these individuals is available at Ex. A, ECF No. 53-1, PageID.534-35.

It is further **ORDERED** that the settlement agreement and plan of allocation are **APPROVED**.

It is further **ORDERED** that Atticus Administration, LLC is **APPOINTED** as the administrator of the settlement fund. The administrator shall receive, disburse, and account for the settlement proceeds as provided by the formula for distribution of the settlement fund set forth in the settlement agreement. Class counsel shall provide and file with the Court and the defendants

a report setting forth the proposed distribution of all funds paid by the defendants as called for in the settlement agreement upon completion of the evaluation of the requests for payment received from class members. After final distribution, class counsel shall file with the Court a certificate that the settlement fund has been disbursed according to the plan, or that funds remain undistributed for any reason, including uncashed settlement checks, as the case may be.

It is further **ORDERED** that class counsel and the settlement administrator, Atticus Administration, LLC, shall remain responsible for completion of the administration of the claims and distribution of the funds, but they may not invade the settlement fund for further reimbursement or payment of fees absent further order of the Court.

It is further **ORDERED** that the plaintiff's motion for attorney's fees and litigation expenses (ECF No. 55) is **GRANTED** and the attorney's fees requested are **APPROVED**.

It is further **ORDERED** that an incentive award in the amount of $5,000 to named plaintiff Marcia Kimble and $17,044.05 in litigation expenses is **APPROVED**. The incentive award may be designated as an administration expense and paid according to the appropriate priority as outlined in the settlement agreement.

It is further **ORDERED** that the case is **DISMISSED WITH PREJUDICE**. The Court retains jurisdiction over all matters relating to the enforcement of the administration of the settlement agreement, including allocation and distribution of the settlement fund, including the award of attorney's fees and expenses.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 8, 2024